869 F.2d 1105
 Jeffrey BENZEL, Appellant,
v.
Gary GRAMMER, individually and as Warden of Nebraska State
Penitentiary; Anthony Pacheco, individually and as Unit
Manager of Housing Unit # 5 Nebraska State Penitentiary;
Dennis I. Steeby, as Housing Unit # 5 Counsel and
individually, Appellees.
Jeffrey BENZEL, Appellee,
v.
Gary GRAMMER, individually and as Warden of Nebraska State
Penitentiary; Anthony Pacheco, individually and as Unit
Manager of Housing Unit # 5 Nebraska State Penitentiary;
Dennis I. Steeby, as Housing Unit # 5 Counsel and
individually, Appellants.
 Nos. 88-1827, 88-1828.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 14, 1988.
Decided March 13, 1989.
Rehearing and Rehearing En Banc Denied May 4, 1989.
 
 Alan M. Thelen, Omaha, Neb., for appellant.
 Susan M. Ugai, Asst. Atty. Gen., Lincoln, Neb., for appellees.
 Before BOWMAN and MAGILL, Circuit Judges, and BATTEY,* District Judge.
 MAGILL, Circuit Judge.
 
 
 1
 Jeffrey R. Benzel (Benzel), an inmate at the Nebraska State Penitentiary, brought this civil rights suit against three prison employees alleging that a prison telephone policy violated his first and fourteenth amendment rights. The telephone policy restricted outside phone calls by inmates in administrative segregation and detention, requiring them to submit a list of three persons and denying permission to call any person not on the list. The policy limited the list to two family members and one female friend. The district court found that the policy violated the equal protection clause because it treated inmates in administrative segregation and detention differently from the rest of the prison population. Therefore, the district court permanently enjoined defendants from implementing that part of the policy which prevented certain inmates from calling nonattorney, nonrelative males, and awarded Benzel damages of $1.00 plus attorney fees against Grammer, the prison warden. Both sides now appeal. Based on the wide deference given prison officials under recent Supreme Court decisions and the inherent reasonableness of the challenged restriction, we reverse the district court and find no constitutional violation.
 
 I. BACKGROUND
 
 2
 The Nebraska State Penitentiary is an inmate detention facility operated by the State of Nebraska through the Nebraska Department of Correctional Services. Inmates are housed in different units, based on their custody level. Housing Unit # 5 (HU # 5) houses inmates on disciplinary segregation and administrative detention.[1] Appellee Grammer testified regarding the function of HU # 5:
 
 
 3
 [A] segregated unit, or controlled unit * * * is necessary relative to the security and control of [the prison]. And it allows for the removal of individuals who for one reason or another are inappropriate for continued placement in the general population * * *.
 
 
 4
 Those individuals who have been found guilty of the established code of offences [sic] under which the Department is operated * * * would be one category.
 
 
 5
 Those individuals who pose an imminent threat to the safety and security of themselves or other individuals or the instution [sic] as a whole, whether that be from assault or threatened assault or attempt to or escape from the facility, as some examples.
 
 
 6
 * * *
 
 
 7
 * * *
 
 
 8
 Generally, they are looked upon as being more in need of more security.
 
 
 9
 Benzel is an inmate at the Nebraska State Penitentiary. He was housed in HU # 5 from May 1985 through August 1986, and from December 28, 1986 through January 23, 1987.[2]
 
 
 10
 Gary Grammer, Anthony Pacheco and Dennis Steeby worked at the penitentiary at the time of the alleged violation. Grammer was warden of the institution from April 1985 through June 1987. He functioned as chief executive of the penitentiary and was responsible for its operation. Pacheco was the unit manager of HU # 5, responsible for the general supervision of staff and inmate activity at HU # 5. Steeby was the unit supervisor for HU # 5, and was the first line consultant to control unit staff regarding security and inmate accountability. Pacheco participated in the preparation of a May 1986 revision of the Housing Unit # 5 Inmate Handbook. The handbook was approved, signed and promulgated by Grammer as warden of the penitentiary. Among other changes, the handbook formalized new telephone procedures which had been implemented in March 1986.
 
 
 11
 Inmates in administrative segregation are allowed to make two phone calls per week in addition to unlimited legal or religious calls. Prior to March 1986, telephone calls were not limited to individuals on a list, and inmates could call nonfamily, nonattorney males outside of the institution. Since March 1986, HU # 5 inmates must submit a list of three names. The listed individuals then become the only three persons the inmate may call. The list--which may be amended at any time--may include family members and one female nonfamily member. Under these rules, HU # 5 inmates cannot call any nonattorney, nonfamily males. The telephone restrictions do not apply to inmates in the general population of the penitentiary.
 
 
 12
 On two occasions during his stays in HU # 5, Benzel submitted requests for telephone calls to appellee Steeby. Steeby refused both requests because Benzel had not submitted the list of names and numbers required by the handbook.[3] Benzel filed suit against the prison officials, claiming that the HU # 5 telephone policy violates the first amendment and the Equal Protection Clause of the fourteenth amendment.
 
 
 13
 The district court referred this matter to a United States magistrate for an evidentiary hearing, which was held September 18, 1987.[4] The magistrate recommended that judgment be entered in the amount of $1.00 plus attorney's fees, against Grammer only, on Benzel's equal protection claim, and that all other claims be denied.[5] The district court followed the magistrate's recommendations except that the court also permanently enjoined the policy prohibiting HU # 5 inmates from telephoning nonfamily, nonattorney males. The district court subsequently entered judgment granting the said damages and injunctive relief, plus attorney's fees of $7,157.00 and expenses of $240.70.
 
 II. DISCUSSION
 
 14
 Convicted criminals do not forfeit all constitutional protections when they don prison garb. A lawfully incarcerated inmate, however, may not exercise certain constitutional rights as freely as he might have outside prison walls. "In sum, there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974) (quoted in Hill v. Blackwell, 774 F.2d 338, 340 (8th Cir.1985)). As the Supreme Court has recognized, "limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives--including deterrence of crime, rehabilitation of prisoners, and institutional security." O'Lone v. Estate of Shabazz, 482 U.S. 342, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987); Pell v. Procunier, 417 U.S. 817, 822-23, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974). While this court's review of a determination concerning the reasonableness of a prison regulation that impinges on a constitutional right is plenary, Hill, 774 F.2d at 343, we are keenly aware that federal courts owe great deference to the expertise of the officials who perform the "always difficult and often thankless task of running a prison." Salaam v. Lockhart, 856 F.2d 1120, 1122 (8th Cir.1988); Bell v. Wolfish, 441 U.S. 520, 562, 99 S.Ct. 1861, 1886, 60 L.Ed.2d 447 (1979).
 
 
 15
 We judge prison regulations alleged to infringe on inmates' constitutional rights under a reasonableness test less restrictive than the test ordinarily applied to alleged constitutional infringements. The Supreme Court recently articulated the proper standard for balancing prisoners' rights with prison rules: "[w]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987). In applying this standard, the Court considered four criteria: (1) whether there is a valid, rational connection between the regulation and legitimate governmental interests put forward to justify it; (2) whether alternative means of exercising their rights remain open to the prisoners; (3) whether accommodation of the asserted rights will trigger a "ripple effect" on fellow inmates and prison officials; and (4) whether a ready alternative to the regulation would fully accommodate the prisoners' rights at de minimis cost to the valid penological interest. Id. 107 S.Ct. at 2262; see Salaam, 856 F.2d at 1122.
 
 
 16
 Although in some instances prison inmates may have a right to use the telephone for communication with relatives and friends, prison officials may restrict that right in a reasonable manner, "subject to rational limitations in the face of legitimate security interest of the penal institution." Hutchings v. Corum, 501 F.Supp. 1276, 1296 (W.D.Mo.1980). A prisoner has no right to unlimited telephone use. See Lopez v. Reyes, 692 F.2d 15, 17 (5th Cir.1982).
 
 
 17
 Appellee Grammer and Unit Supervisor Extrom both indicated that abuses were occurring with the telephones in HU # 5.[6] Appellee Grammer indicated that the telephone situation in HU # 5 was thoroughly discussed before the new policy was adopted. He stated:
 
 
 18
 [W]e attempted to look at the whole telephone procedure for this particular unit, we felt that there was importance to the privilege that inmates have to use the telephone. Because of some problems that had developed, we indicated the need to establish some control in that area.
 
 
 19
 And in looking at the kinds of contacts that we felt it would be most significant, allowing that there also was the privilege of visiting, mail to continue, we felt that some family contact certainly was significant, and that primarily the other significant kinds of contacts with men within the instution [sic] were with significant females in the community, in terms of mother or children or wife or girlfriend or fiance or common-law wife or something of that sort. And we thought that would be the most significant kind of contact, rather than another male contact.
 
 
 20
 After implementation of the policies, the number of complaints went down. Extrom testified that prison officials had "better control on the situation" and that the security and order of HU # 5 had been enhanced. Appellee Steeby also indicated that after the new policy was implemented, "[i]t was considerably a lot better program. A lot less problems, no complaints. It worked good for us, and the inmates as well."
 
 
 21
 In the present case, internal security and rehabilitation concerns justify the telephone policy in HU # 5. The policy at issue only limits inmates' right to communicate by telephone, not their mail or visiting privileges. Furthermore, the policy seems the best way of addressing the legitimate concerns of prison authorities. After considering all pertinent factors, we conclude this policy does not violate appellant's rights under either the first amendment or the equal protection clause of the fourteenth amendment.
 
 III. CONCLUSION
 
 22
 The decision of the district court is reversed and the case is remanded with instructions to lift the injunction and reverse the awards of nominal damages, costs and attorney's fees.
 
 
 
 *
 THE HONORABLE RICHARD H. BATTEY, United States District Judge for the District of South Dakota, sitting by designation
 
 
 [1]
 Administrative detainees include protective custody inmates, intensive management inmates, inmates detained pending completion of investigations and inmates on administrative confinement
 
 
 [2]
 The district court concluded that Benzel's being out of HU # 5 at the time of trial did not render the claim for declaratory and injunctive relief moot, finding it likely that Benzel would receive further HU # 5 incarceration during the remainder of his sentence. See Weinstein v. Bradford, 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975)
 
 
 [3]
 Appellees/cross-appellants point to Benzel's refusal to submit a list and argue that Benzel had not presented sufficient evidence to prove a right to relief. As the magistrate noted, however, Benzel's failure to submit a list of names did not render his claim for damages nonjusticiable, as there is no contention that he would have been allowed to place a call to a nonattorney, nonfamily male. See Sierra Club v. Morton, 405 U.S. 727, 735, 92 S.Ct. 1361, 1366, 31 L.Ed.2d 636 (1972)
 
 
 [4]
 On appeal, Benzel argues that the district court erred in referring the case to the magistrate without Benzel's express consent. We find this argument without merit. 28 U.S.C. Sec. 636(b)(1)(B) provides that "[a] judge may * * * designate a magistrate to conduct hearings, including evidentiary hearings, * * * of prisoner petitions challenging conditions of confinement." The district court carefully considered the magistrate's recommendations. See United States v. Raddatz, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980)
 
 
 [5]
 The magistrate also found constitutional violations with respect to Benzel's other claims based on the telephone policy, but concluded that good faith immunity protected the prison officials. The district court adopted these findings by the magistrate. Because we find that the challenged policy does not violate Benzel's first amendment rights or his rights under the equal protection clause of the fourteenth amendment, however, we need not engage in any discussion of good faith immunity
 
 
 [6]
 Inmates were calling minors without permission of their parents, wives and girlfriends of other inmates, and other individuals who did not wish to communicate with the inmates