892 F.Supp. 1218 (1995)
Felix D. SMITH, Plaintiff,
v.
Norman COPELAND, Leonard Hines, Michael Hurst, Robert Scott, John Rich, Mike Morgan, John Holshouser, Officer Stoffregen, Officer Hampton, Officer J.P. Mulcahy, Gene Huckstep, Larry Bock, E.C. Younghouse and Cape Girardeau County, Missouri, Defendants.
No. 1:93CV192-DJS.
United States District Court, E.D. Missouri, Southeastern Division.
April 25, 1995.
*1219 *1220 *1221 *1222 *1223 *1224 Felix D. Smith, Jefferson City, MO, plaintiff pro se and Keith W. Brunstrom, Jefferson City, MO, for plaintiff.
Joseph J. Russell, Marcia Mulcahy, Limbaugh and Russell, Cape Girardeau, MO, and Douglas T. Sloan, Cape Girardeau, MO, for defendants.

ORDER
STOHR, District Judge.
Plaintiff brings the instant action pursuant to 42 U.S.C. § 1983 alleging that, while he was a pretrial detainee in the jail of defendant Cape Girardeau County, his constitutional rights were violated. Plaintiff was detained in the Cape Girardeau County Jail between December 17, 1991 and January 23, 1992, and again between April 10, 1992 and October 20, 1992. A number of plaintiffs allegations relate to three periods of confinement in isolation between January 5 and 7, 1992, between July 22 and 24, 1992, and between July 25 and 29, 1992. Defendant Norman Copeland is the Sheriff of Cape Girardeau County. Defendants Leonard Hines, Michael Hurst, Robert Scott, John Rich, Mike Morgan, John Holshouser, Officer Stoffregen, Officer Hampton, and Officer J.P. Mulcahy are sued as Deputy Sheriffs of Cape Girardeau County. Defendants Gene Huckstep, Larry Bock and E.C. Younghouse are sued as members of the Board of Commissioners of Cape Girardeau County.
Count I of the second amended complaint, pled against all defendants, alleges a catalogue of constitutional rights violations. Count II, also pled against all defendants, alleges that the defendants conspired together in committing the conduct which allegedly violated plaintiff's constitutional rights. Count III asserts a tort claim under Missouri law against defendants Morgan and Rich for assault and battery. The matter is now before the Court on defendants' second amended motion to dismiss and motion for summary judgment.
The Court notes initially that the construction of plaintiff's complaint is made more difficult by its failure to explicitly link particular alleged facts with particular alleged constitutional violations attributed to specific defendants. Instead, some ten or more pages of factual allegations are set out separately from the statement of plaintiff's constitutional claims in Count I, where various constitutional theories are invoked without specific reference to the particular factual allegations underlying each. Given the imminence of the trial setting, the Court will use its best efforts to interpret the complaint rather than order plaintiff to re-plead the complaint in more organized fashion.

Defendants' Second Amended Motion to Dismiss
Defendants first argue that defendant Cape Girardeau County has sovereign immunity from the tort liability asserted in *1225 this action and from punitive damages pursuant to § 537.600 R.S.Mo. because it is a political subdivision of the State of Missouri. In the Court's view, § 537.600 merely codifies the concept of the State of Missouri's sovereign immunity pursuant to the Eleventh Amendment, and sets forth a few explicit waivers of that immunity. The United States Supreme Court has held, however, that counties do not share in the State's immunity under the Eleventh Amendment. See Hess v. Port Authority Trans-Hudson Corp., ___ U.S. ___, ___, 115 S.Ct. 394, 404, 130 L.Ed.2d 245 (1994) ["[C]ities and counties do not enjoy Eleventh Amendment immunity."]; Port Authority Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 312, 110 S.Ct. 1868, 1876, 109 L.Ed.2d 264 (1990). Section 537.600 therefore affords Cape Girardeau County no immunity from claims brought under 42 U.S.C. § 1983 in federal court. Defendants summarily assert that the county cannot be liable for punitive damages, citing Newport v. Fact Concerts, Inc., 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981). The holding of Newport concerns municipalities, however, not counties. In the absence of further support, defendants' argument concerning punitive damages is therefore also rejected.
Defendants next contend that defendants Huckstep, Bock and Younghouse (collectively "the Commissioners") and Sheriff Copeland, as elected public officials, are entitled to official immunity because their relevant conduct was discretionary. The doctrine as applied to § 1983 claims is not an absolute immunity, but a qualified immunity to which an official is not entitled unless his conduct was objectively reasonable with reference to clearly established law. See, e.g., Vieira v. Presley, 988 F.2d 850, 852 (8th Cir.1993). Movants' separately assert this qualified immunity, but in a merely general manner, such that the argument is rejected both for its lack of persuasive specificity and because the Court's own review of the complaint indicates that the constitutional rights which plaintiff alleges to have been violated are clearly established. Returning to movants' reliance on the more expansive common-law immunity afforded to municipalities for discretionary functions, the Court notes that this immunity has been rejected by the Supreme Court as a defense to actions under § 1983. Owen v. City of Independence, 445 U.S. 622, 649, 100 S.Ct. 1398, 1414-15, 63 L.Ed.2d 673 (1980).
The Commissioners also assert legislative immunity to the instant claims against them, arguing that their role, if any, in the events upon which plaintiff's claims are based was in their legislative capacity as the county commission. Plaintiff sues each of the Commissioners in his official capacity. In the absence of allegations concerning these defendants' personal involvement in the acts complained of, other than by setting the county's policies through their function as elected county legislators, the Court concludes that all claims against defendants Huckstep, Bock and Younghouse are subject to dismissal based on absolute legislative immunity. See, e.g., Scott v. Greenville County, 716 F.2d 1409, 1422 (4th Cir.1983).
Movants next argue that respondeat superior liability is not available to plaintiff under § 1983. As far as it goes, movants' assertion is a correct statement of the law. Individual liability of government officials under § 1983 must be predicated on "a causal connection between the misconduct complained of and the official sued." Harris v. Pirch, 677 F.2d 681, 685 (8th Cir.1982), quoted with approval in Wilson v. City of North Little Rock, 801 F.2d 316, 322 (8th Cir.1986). Supervisory personnel are not liable absent "direct responsibility for the improper action" or "personal involvement of the officer being sued." Harris, 677 F.2d at 685 (citations omitted). Movants fail, however, to analyze whether plaintiff's allegations in support of their liability do in fact amount to nothing more than an assertion of respondeat superior liability.
The Court nonetheless undertakes such a review. Plaintiff alleges that defendant Copeland "acquiesced in and expressed ratification of" the conduct of the other defendants, by failing to reprimand or discipline them, and by failing to change policies and practices to address their alleged misconduct. Second Amended Complaint, ¶ 84. *1226 A supervisor may be found liable for failure to supervise or control his subordinates only where plaintiff establishes his "deliberate indifference or tacit authorization of the offensive acts by failing to take remedial steps following notice of a pattern of such acts by his subordinates." Wilson, 801 F.2d at 322.
Although plaintiff has not explicitly alleged Copeland's knowledge of the other defendants' alleged conduct, such an assertion is implicit in the context of ¶ 84. Furthermore, plaintiff separately alleges that Copeland is liable on the basis of unconstitutional policies, practices and customs at the jail which are attributable to him. Second Amended Complaint, ¶ 87. Although the Court will remain mindful of the standards applicable to Copeland's liability as a supervisor, the Court concludes that the arguments concerning respondeat superior liability asserted in the motion to dismiss do not warrant dismissal of the claims asserted against Copeland.
Defendant Copeland argues that he is not subject to liability under § 1983 on the theory that he failed to adequately train his subordinate officers, because plaintiff has failed to allege a pattern of unlawful conduct by the subordinate officers which would alert Copeland to the need for additional training. Upon review of the complaint, however, the Court finds that the allegations do not even attempt to set forth a claim against Copeland on a failure to train theory, as distinct from the theories of Copeland's liability which are summarized in the preceding paragraphs. The Court concludes that no failure to train claim has been separately pled, and need consider defendant's argument no further.
Defendants Hines, Hurst, Scott, Holshouser, Stoffergen, Hampton, Morgan, Rich and Mulcahy assert that they are entitled to qualified immunity as against all of plaintiff's claims because the legal standards governing their conduct at the time of plaintiff's detention were not clearly established. Defendants' discussion of the qualified immunity doctrine in terms of "deliberate indifference" represents a confusion of legal standards, and undermines defendants' assertion of qualified immunity, which is rejected as presented in the motion to dismiss.
The Court agrees with defendants' contention that plaintiff is, as a matter of law, not entitled to injunctive relief because plaintiff is no longer detained at the Cape Girardeau County Jail. See, e.g., Smith v. Boyd, 945 F.2d 1041, 1043 (8th Cir.1991); Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir.1985). Plaintiff's prayers for injunctive relief will therefore be dismissed.
Defendants next challenge the complaint to the extent that it contains language suggesting that plaintiff seeks to represent a class of pretrial detainees. Plaintiff has failed to seek class certification, and the complaint's references to a plaintiff class have not previously been brought to the Court's attention. The complaint itself does not attempt to make the necessary showing of the prerequisites to a class action, pursuant to Fed.R.Civ.P. 23(a). In the absence of any timely motion for class certification, plaintiff now for the first time attempts to satisfy Rule 23(a) in his response to defendants' motion. The Court rejects this belated attempt to seek leave to proceed as a class action, particularly in view of the imminent trial setting and the fact that plaintiff is no longer detained at the jail. To the extent the complaint contains allegations in support of a class action, such allegations will be dismissed.
The final argument of defendants' motion to dismiss is that plaintiff's state law tort claim in Count III should be dismissed pursuant to 28 U.S.C. § 1367(c)(3) in the event that all of plaintiff's federal claims are dismissed. Because several of plaintiff's constitutional claims have not been defeated by the motion to dismiss, this argument must necessarily be rejected.

Defendants' Motion for Summary Judgment
Defendants' separately filed motion for summary judgment contains several arguments also asserted in their motion to dismiss. Having previously addressed them, the Court will not repeat its discussion and analysis of these arguments. Defendants again raise, but with greater specificity and evidentiary support, their qualified immunity argument. Some of defendants' discussion in *1227 this context amounts to argument in support of summary judgment on the merits of several of plaintiff's claims. Against this background and record, the Court will undertake a comprehensive review of the claims which it construes plaintiff's pleading to assert. Where appropriate, the Court will exercise its power to dismiss claims sua sponte for failure to state a claim upon which relief may be granted. See Smith v. Boyd, 945 F.2d 1041, 1042-43 (8th Cir.1991). Furthermore, through defendants' motion for summary judgment, plaintiff has received advance notice of the potential for summary judgment and an adequate opportunity to submit evidence in opposition. The Court therefore deems all claims and issues ripe for summary judgment consideration. See Chrysler Credit Corporation v. Cathey, 977 F.2d 447, 449 (8th Cir.1992).
By way of background to the Court's examination of the specifics of plaintiff's claims, the Court must determine the standards applicable to conditions of confinement claims asserted by a pretrial detainee. In Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), the United States Supreme Court held that:
In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee.
Id. at 535, 99 S.Ct. at 1872. In Wolfish, the court went on to observe that "[n]ot every disability imposed during pretrial detention amounts to `punishment' in the constitutional sense, however," and that "[l]oss of freedom of choice and privacy are inherent incidents of pretrial detention." Id. at 537, 99 S.Ct. at 1873. The court stated the determinative consideration as follows: "Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to `punishment.'" Id. at 539, 99 S.Ct. at 1874. Only if the converse is true  that is, if the restriction or condition is "arbitrary or purposeless"  is the action a punishment that violates Due Process if inflicted upon detainees. Id.
Plaintiff asserts a constitutional challenge to the jail custom of requiring felons or those charged with felonies to sleep, not in their cells, but on bedding placed on the floor outside their cells. Defendant Hurst's affidavit explains that jail policy ordinarily requires inmates to spend daylight hours in the jail's common areas, with cells locked to secure the inmates' personal belongings, but that during that time the inmates are allowed to bring their mattresses out of their cells to lie or sleep on in other areas of the jail. Plaintiff's affidavit filed in response to the summary judgment motion is consistent on this point, but also states, without any qualifying language as to the time of day or night, that inmates who do not have a cellmate are not allowed to sleep in their cells but are required to sleep on their bedding placed on the floor outside their cells. Plaintiff fails to state that he personally was ever required to sleep on the floor, even overnight, and plaintiff cannot base a claim on what happened to others but not to himself. The Court concludes as a matter of law that plaintiff fails to state a constitutional claim upon which relief might be granted as to the jail's policies concerning where inmates must or may not sleep.
Plaintiff's complaint may be construed as asserting a constitutional challenge to the jail's alleged policy of "locking down" North Block inmates in their cells each afternoon and not allowing them telephone access during that time. Even assuming that plaintiff asserts that this policy was personally applied to him, the Court concludes as a matter of law that, without more, plaintiff states no viable constitutional claim on either of these points. Prisoners have no right to unlimited telephone use or unlimited out-of-cell time. See, e.g., Aswegan v. Henry, 981 F.2d 313 (8th Cir.1992); Benzel v. Grammer, 869 F.2d 1105, 1108 (8th Cir.1989); Wishon v. Gammon, 978 F.2d 446 (8th Cir.1992).
Plaintiff complains that the jail's law library consisted solely of the five-volume set of the 1986 Revised Statutes of Missouri. To the extent this allegation is construed as a *1228 claim that the law library was constitutionally inadequate and so violated plaintiff's right of access to the courts, the claim fails for the lack of any assertion of actual injury or prejudice suffered by plaintiff as a result of the allegedly inadequate legal resources. See, e.g., Aziz v. Groose, No. 94-1618, slip op. at 3, 34 F.3d 1070, 1994 WL 440743 (8th Cir. Aug. 17, 1994); Hamm v. Groose, 15 F.3d 110, 112 (8th Cir.1994). The claim will therefore be dismissed.
Plaintiff alleges that during his detention from December 17, 1991 through January 23, 1992, he "was allowed approximately four hours of exercise once every three weeks." Second Amended Complaint, ¶ 51. Plaintiff further asserts that he was allowed exercise with the same frequency during his detention from April 10, 1992 through October 20, 1992. For a convicted prisoner under the Eighth Amendment, this limited recreation would not violate the Constitution:
[D]enying "exercise" for inmates who otherwise are out of their cells for work and for meals does not constitute a "deprivation denying `the minimal civilized measures of life's necessities'" sufficient to form the basis of an Eighth Amendment violation. Wilson v. Seiter, [501 U.S. 294, 298] 111 S.Ct. 2321, 2324 [115 L.Ed.2d 271] (1991) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 [101 S.Ct. 2392, 2399, 69 L.Ed.2d 59] (1981)).
Henderson v. Evans, No. 92-1118, slip op. at 4, 980 F.2d 734, 1992 WL 354480 (8th Cir. 1992). With pretrial detainees, whose period of confinement is likely to be of shorter duration than that of convicted prisoners serving sentences, the health consequences of limited exercise would generally be less serious. The Eighth Circuit has in fact held that "[d]enial of recreation for a short period, per se, is not a constitutional violation." Knight v. Armontrout, 878 F.2d 1093, 1096 (8th Cir.1989).
Defendants have not specifically addressed plaintiff's allegations concerning exercise in their motion for summary judgment, and so have not disputed plaintiff's allegations nor demonstrated that the limitation is reasonably related to a legitimate institutional objective. Although the Court suspects that such a showing is easily made, at this point in the proceedings it has not been made. If plaintiff intends to assert a specific claim based on his allegation concerning limited exercise opportunities, the claim remains for trial.
Plaintiff alleges that on January 5, 1992, defendant Morgan awakened plaintiff and, without provocation or justification, sprayed mace in plaintiff's face and forcibly dragged plaintiff to isolation confinement in the jail's East Confinement cell. In support of the motion for summary judgment, defendant Morgan's affidavit attests that plaintiff was sleeping on a mattress on top of a picnic table in the jail, and that plaintiff repeatedly defied Morgan's order to move the mattress off of the table onto the floor or into one of the open cells. Morgan then used the mace to coerce plaintiff to get off of the table. Defendant Hurst's affidavit states that mattresses are not allowed on top of tables in the jail's common areas for "disciplinary and security reasons" and also so that the tables can be used by other inmates. Plaintiff's affidavit filed in response does not directly contradict Morgan's statements concerning repeated directions ignored by plaintiff, but asserts that Morgan awakened plaintiff and sprayed mace in plaintiff's face "without provocation or justification." Pltf.Aff. ¶ 15.
By plaintiff's own account, when Morgan would not explain his direction that plaintiff remove all of his clothing once in the confinement cell, plaintiff refused to do so. Plaintiff alleges that Morgan again sprayed plaintiff's eyes with mace, and then grabbed the lapels of plaintiff's jumpsuit and shoved him around the confinement cell. Morgan then called for defendant Rich. When Rich arrived, the two defendants again demanded that plaintiff remove all his clothes. It is undisputed that plaintiff again refused, because Rich and Morgan would not explain the necessity for the order. Plaintiff alleges that defendant Rich then threw plaintiff on the bare steel bed frame and held him there, while Morgan "put his hands in Plaintiff's face and twisted them" to further activate and spread the mace that had been sprayed in Plaintiff's eyes and face.
*1229 After handcuffing plaintiff to the bed frame, plaintiff alleges that Morgan and Rich were unable to disrobe plaintiff, and so cut off plaintiff's clothes using scissors. They then removed the handcuffs. Morgan's affidavit states that plaintiff repeatedly refused the orders of Morgan and Rich to remove his clothing, and that plaintiff struggled and kicked when they attempted to forcibly remove plaintiff's uniform. Morgan attests that after removing plaintiff's clothing "in pieces," he and Rich led plaintiff to the sink so that plaintiff could flush his eyes with water and that they gave plaintiff toilet paper with which to wipe his eyes. Plaintiff's affidavit flatly contradicts this assertion, stating instead that plaintiff was not allowed to wash the mace from his eyes before the water was turned off.
The Court construes the complaint as asserting that the physical force and mace employed by defendants Morgan and Rich constituted an excessive use of force in violation of plaintiff's constitutional rights.[1] Given the contradictions between the two versions of the facts asserted by plaintiff and the two defendants involved, the Court concludes that the excessive force claim cannot be resolved on summary judgment. The legal standards applicable to the determination that must be made by a jury are as follows. Consistent with Wolfish, the Supreme Court has stated that "the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." Graham v. Connor, 490 U.S. 386, 395 n. 10, 109 S.Ct. 1865, 1871 n. 10, 104 L.Ed.2d 443 (1989). Under Wolfish's standard then, the use of force by defendants Morgan and Rich was "punishment" in violation of plaintiff's constitutional rights if it was not reasonably related to a legitimate governmental objective. In addition to determining the facts of the incident, the jury will decide whether the force used was reasonably related to a legitimate governmental objective.
Also in connection with this January 5 incident, plaintiff alleges that he repeatedly requested medical attention after being sprayed with the mace, but that Morgan and Rich refused to provide or allow it. Plaintiff claims to have sustained damage to his eyesight as a result of the mace. Defendants have not specifically sought summary judgment with respect to this claim, which the Court construes as one asserting that plaintiff's constitutional rights were violated by Morgan and Rich's deliberate indifference to plaintiff's serious medical needs. This standard, applicable to medical claims of convicted prisoners under the Eighth Amendment, has been held by the Eight Circuit to be equally applicable to the medical claims of pretrial detainees under the Fourteenth Amendment. See, e.g., Davis v. Hall, 992 F.2d 151, 152-53 (8th Cir.1993); Johnson-El v. Schoemehl, 878 F.2d 1043, 1048 (8th Cir. 1989). In the absence for any basis for summary judgment, this claim is triable to a jury using the deliberate indifference standard.
Plaintiff alleges that he was left in the isolation cell for approximately 48 hours, to January 7, 1992, without clothing, bedding, toilet paper, toothbrush, soap or water. He asserts that he was "made to endure the stench of his own feces and urine" throughout that time, and was subjected, while naked, to the view of jail officers and other prisoners, who verbally harassed and humiliated plaintiff. Plaintiff further complains that while in isolation confinement, he was served only cold meal rations. The Court construes the complaint as asserting a constitutional challenge to these conditions of plaintiff's isolation confinement.
A diet of only cold food, in and of itself, does not offend the Constitution, and any claim based on that allegation will be dismissed. See, e.g., Brown-El v. Delo, 969 F.2d 644 (8th Cir.1992); Rust v. Grammer, 858 F.2d 411, 414 (8th Cir.1988). As for plaintiff's claim that he had no clothing, defendant Morgan's affidavit indicates that he *1230 and Rich provided plaintiff with a paper gown to wear following removal of his uniform. Defendant Hurst's affidavit states that there have been three suicides in the jail. Hurst's affidavit attests that the jail's policy is to provide solitary confinement inmates with paper gowns and paper blankets because inmates in solitary confinement are suicide risks and have in the past stuffed clothing into the toilet to flood the jail. According to Hurst's affidavit, detainees in the isolation cell are not allowed toiletries, because they have also been used to stop up the toilet; neither are mattresses allowed, because they have in the past been torn up by inmates in solitary confinement and used to stop up the toilet or to attempt suicide by hanging.
According to Morgan's affidavit, plaintiff flooded the confinement cell on the afternoon of January 5, his first day in isolation, by making the cell's toilet overflow. Particularly in view of this assertion, the Court concludes as a matter of law that the decision not to allow plaintiff to have clothing, bedding or toiletries (including toothpaste, toilet paper and soap) while in isolation confinement for a limited time was reasonably related to several legitimate governmental objectives, and so did not violate plaintiff's constitutional rights as a pretrial detainee. Defendants are entitled to summary judgment on these claims.
Hurst attests that after an inmate has flooded the cell using the paper gown and blanket provided, the water to the cell is turned off, but that the inmate is offered drinking water with each meal and the water is turned on in the cell a minimum of three times per day, for example, to allow the toilet to be flushed. Plaintiff does not contradict these assertions. Again, as a matter of law, the Court concludes that these limitations on the water supply to the isolation cell are reasonably related to a legitimate objective and furthermore do not deprive plaintiff of minimally necessary drinking water or hygienic requirements. Defendants will be granted summary judgment with respect to these claims as well.
Plaintiff's allegations concerning verbal harassment are also subject to dismissal. Gestures and abusive language, without more, are not actionable under § 1983. McDowell v. Jones, 990 F.2d 433, 434 (8th Cir.1993). The deprivation of clothing and bedding other than a paper gown and blanket has previously been found by the Court to be reasonably related to legitimate objectives and so to comport with the applicable Due Process standard. That being the case, plaintiff's bodily exposure to the view of jail personnel and to other prisoners does not state a viable constitutional claim. See also Tryon v. McCoy, No. 92-2311, slip op. at 2, 994 F.2d 843, 1993 WL 151441 (8th Cir. May 11, 1993); Stith v. Delo, No. 92-2057, slip op. at 2, 977 F.2d 586, 1992 WL 289590 (8th Cir. Oct. 19, 1992).
During a later period of pretrial detention at the jail, plaintiff was again placed in isolation confinement. Plaintiff alleges that on July 22, 1992, defendant Scott ordered plaintiff to move from North Block Cell # 5 to North Block Cell # 4, after plaintiff had just finished cleaning Cell # 5. Plaintiff refused to make the move when Scott would not respond to plaintiff's request for an explanation of the order. Plaintiff was again taken to the East Confinement cell. Again plaintiff refused to remove his clothing when Scott would not explain the order to do so. Plaintiff asserts that his clothes were removed by cutting them off with a pair of scissors.
Defendant Holshouser's affidavit states that it was Holshouser, rather than Scott, who asked plaintiff to move from Cell # 5 to Cell # 4 on July 22. Consistent with plaintiff's own allegations, Holshouser's affidavit states that plaintiff refused to make the move as directed. The Incident Report filed by Holshouser indicates that it was defendant Scott who "put [plaintiff] in East Confinement." Scott's affidavit also indicates that his role was to place plaintiff in the solitary confinement cell, and that plaintiff voluntarily removed his jumpsuit after repeated requests by Scott to do so.
The Court interprets the complaint as not asserting a separate claim of excessive force with respect to this placement in isolation by defendant Scott. To the extent plaintiff challenges the same conditions of *1231 confinement as previously discussed by the Court, the claims are likewise subject to summary judgment. With respect to this incident, plaintiff also alleges that his repeated requests for a blanket went unanswered, and that the conditions in the cell were cold. Defendant Hurst's affidavit states that the jail's temperature is maintained at approximately 72 degrees at all times. The Court's earlier analysis applies equally to this claim. The decision not to provide plaintiff with a cloth blanket was reasonably related to the legitimate objective of depriving plaintiff of the means to flood the cell, which others and plaintiff himself were believed to have previously done in similar circumstances. The Court will grant defendants summary judgment with respect to this claim.
Upon his release from East Confinement on July 24, 1992, plaintiff returned to North Block Cell # 5 at approximately 9:00 a.m. Plaintiff requested that he be allowed to shower, which he had not been allowed to do during his isolation confinement. The request was denied and plaintiff told that showers were only available at 5:30 a.m. in North Block and that he would have to wait until the next morning to shower. Due to the general way in which the constitutional claims have been pled, the Court is uncertain whether plaintiff intends to assert a claim based on these allegations alone. Particularly in view of plaintiff's failure to identify the individual who denied his request to shower on July 24, the Court concludes, however, that plaintiff has failed to state a constitutional claim concerning the one-day delay in showering.
The next morning, July 25, the laundry room attendant accused plaintiff of having assaulted him when plaintiff entered the laundry room ostensibly to obtain towels for his shower. Based on this accusation, defendant Hampton returned plaintiff to East Confinement, where plaintiff's clothing once again was forcibly removed. Defendant Moore attests that he saw plaintiff enter the jail's laundry room at approximately 5:50 a.m. on July 25, 1992, and that shortly thereafter the laundry room attendant, Bryon Stone, ran from the laundry room and told Moore that plaintiff had struck him in the face. According to Moore, plaintiff came out of the laundry room behind Stone with his fists clenched and was verbally abusing Stone. Defendant Hampton's affidavit attests that he responded to Deputy Moore's phone call concerning a disturbance, and was advised that there had been an altercation between plaintiff and the laundry room attendant. Hampton states that when he and Deputy Stoffergen told plaintiff that he was going to be placed in confinement, plaintiff admitted that he had hit the laundry room attendant and said that he would go into solitary confinement once his personal belongings were removed from his cell and secured. Moore's and Stoffergen's affidavits corroborate these statements by plaintiff. Once in the confinement cell, according to Hampton's affidavit, plaintiff refused to remove his clothes, and Hampton removed them using only such force as was necessary to counter plaintiff's physical resistance.
The Court has previously addressed plaintiff's claims concerning the conditions of isolation confinement and the removal of his clothing upon his placement there. The same conclusions are applicable to this third incident. With respect specifically to plaintiff's claims concerning the smell of his own wastes, defendant Holshouser's affidavit and the jail records submitted in support of it indicate that Holshouser offered plaintiff opportunities to flush his toilet on July 23, 24, 25 and 26, but that plaintiff declined. The affidavit of Deputy Richard D. Pipkin also attests that plaintiff refused to flush the toilet and get drinking water when his water was turned on in the afternoon of July 23. Plaintiff's affidavit does not refute these statements by defendants. Defendants are entitled to summary judgment on plaintiff's claims concerning the lack of running water in the isolation cell. As with the second incident, the Court does not construe the complaint as asserting a separate claim of excessive force in connection with plaintiff's placement in isolation confinement.
Plaintiff alleges in his complaint that shortly after his return to isolation on July 25, plaintiff used the toilet in the East Confinement cell. When he flushed it, the toilet *1232 overflowed and "raw sewage" overflowed onto the floor of the cell. Plaintiff asserts that defendants then turned off the water to the cell for the remainder of plaintiff's confinement there. Plaintiff complains that, until the morning of July 29, 1992, some five days later, no attempt was made to clean up the overflow, nor was plaintiff allowed to clean the cell. Defendant Moore states in his affidavit that, on July 27, he observed plaintiff flooding the east confinement cell by stuffing his paper gown into the toilet and repeatedly flushing it. In his affidavit, plaintiff denies that he ever stuffed a paper gown or any other object or material into any cell toilet.[2]
To the extent that plaintiff asserts that his constitutional rights were violated by the alleged presence of "sewage" in his cell during this five-day period, defendants have neither disputed that the overflow was not promptly cleaned up nor provided a basis for summary judgment under the applicable Wolfish Due Process standard.[3] The parties' dispute as to how the overflow happened may be relevant to a legitimate institutional objective for leaving the overflow for a period of time or for requiring plaintiff to clean it himself. In any event, plaintiff's claim concerning the exposure to sewage fails to state a claim against any one or more of the particular defendants named in the complaint. Plaintiff has made no specific factual allegations that provide the necessary personal involvement required for liability on the part of any of the individual defendants, and plaintiff does not allege that the exposure to the overflow was pursuant to any custom or policy of the jail or Cape Girardeau County. As pled, then, the complaint fails to state a claim upon which relief might be granted with respect to this incident, and the claim will be dismissed on that basis.
Plaintiff alleges that on July 28, he went without food and drink because both plaintiff and defendant Holshouser refused to walk in the sewage on the cell's floor to allow delivery of the food and drink which Holshouser brought to the cell. Defendant Holshouser's affidavit and the underlying jail logs state that, on July 23, when Holshouser went to deliver plaintiff's lunch, plaintiff was standing on his bed holding his penis, such that Holshouser feared plaintiff was intending to urinate on him when he delivered plaintiff's food, and that plaintiff defied Holshouser's order to turn around. In his affidavit, Holshouser further states that this was the only time during plaintiff's solitary confinement that he was not provided a scheduled meal. Plaintiff's affidavit directly contradicts Holshouser's recitation of plaintiff's conduct. There exists a direct dispute of fact as to the occurrence of this incident. Even under plaintiff's version of the facts, however, the Court concludes as a matter of law that the deprivation of a single meal under the circumstances alleged is de minimis and does not rise to constitutional magnitude. To the extent that a separate claim is intended with respect to this alleged incident, the Court will dismiss it for failure to state a claim upon which relief may be granted.
With respect to all three instances of confinement in isolation, plaintiff asserts a claim based on his allegations that his placement in isolation was arbitrary, without any notice, hearing or findings, without right to counsel, and with no independent investigation of the charges. Construing plaintiff's claim as a Due Process claim, the Court is again guided by the Wolfish standards. The Due Process prohibition on "punishment" in this context cannot be a prohibition on the imposition of discipline for misconduct as a *1233 detainee; such an interpretation would deprive jail authorities of the necessary ability to preserve the order and security of their institutions. Instead, the Supreme Court has specially defined "punishment" in this Due Process context as meaning lacking a reasonable relation to a legitimate objective. Certainly the imposition of discipline necessary to preserve order and security is just such a legitimate objective of jail officials. Wolfish itself recognizes that "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." Wolfish, 441 U.S. at 546, 99 S.Ct. at 1878.
The "punishment" prohibited by Due Process clause, then, does not encompass all punishments for pretrial detainees' misconduct. The Tenth Circuit, applying the Wolfish standards in the same disciplinary context, has held that "a pretrial detainee may be placed in isolation to maintain prison discipline." Stevenson v. Smith, Nos. 91-3384 & 92-3002, 980 F.2d 741, 1992 WL 362916, *4 (10th Cir.1992). In a very recent decision, the First Circuit has concluded that "[t]he administrators of the prison must be free, within appropriate limits, to sanction the prison's pretrial detainees for infractions of reasonable prison regulations that address concerns of safety and security within the detention environment." Collazo-Leon v. United States Bureau of Prisons, 51 F.3d 315, 318 (1st Cir.1995). The First Circuit reasoned that the deference to jail officials expressed in Wolfish "is a clear approval of a broad exercise of discretion by prison authorities to take reasonable and necessary action, including punishment, to enforce the prison disciplinary regime and to deter even pretrial detainees from violation of its requirements." Id.
In view of the rationale expressed in Wolfish and these other cases, the Court concludes that there exists no basis in the Due Process Clause or elsewhere in the Constitution for requiring that discipline not be imposed upon a pretrial detainee for violations of institutional discipline without the particular procedural mechanisms invoked by plaintiff here, including notice, a hearing or specific findings, a right to counsel, and an independent investigation of the charges. The Court will therefore grant summary judgment in defendants' favor on these claims. In this context, then, plaintiff's Due Process right is not to be punished for misconduct in a manner that is not reasonably related to a legitimate institutional objective. The determination whether this right has been infringed does not extend to a de novo review of the jail official's decision whether and how to discipline plaintiff. To the contrary, the Court would deem the Due Process standard satisfied if the conduct for which discipline was imposed was a threat to a legitimate institutional objective and, borrowing from the convicted prisoner context, there existed "some evidence" that plaintiff had committed the conduct for which discipline was imposed.
Construing plaintiff's claim in this fashion, the Court determines that defendants are entitled to judgment as a matter of law. In the first two instances, the need for detainees to comply with the directions of jail personnel is a legitimate governmental objective, and there exists evidence that plaintiff willfully refused to comply with defendant Morgan's order to remove himself from the table top and with defendant Holshouser's order to switch cells. As to the third instance, a prohibition on physical altercations obviously serves a legitimate governmental objective, and there exists some evidence that plaintiff struck the laundry room attendant. Summary judgment will be entered in defendants' favor on all of plaintiff's claims concerning the decision to place plaintiff in isolation confinement in each of the three instances at issue in the second amended complaint.
Plaintiff alleges that on July 25, 1992, plaintiff's mother was turned away from regular Saturday visitation with plaintiff, and that visitation was denied to everyone housed in North Block. Plaintiff alleges that this denial of visitation was not reasonably related to any penological goal. The Court has rejected any attempt to bring the instant suit as a class action, and plaintiff cannot assert a denial of visitation claim on *1234 behalf of other detainees. With respect to the denial of visitation with his mother on July 25, when plaintiff was in isolation confinement, defendant Hurst's affidavit (¶ 13) states that "in the interest of discipline and security," inmates in confinement are not allowed to have visitors. As a matter of law, the Court concludes that this satisfies the applicable Due Process standard by demonstrating that the denial of visitation on that particular occasion bore a reasonable relation to a legitimate institutional objective. Defendants are therefore entitled to summary judgment on any claim based on the denial of visitation on July 25. In his affidavit filed in opposition to the motion for summary judgment, plaintiff asserts for the first time that he was denied visitation with his mother "sometime in May of 1992" at a time when he was not in isolation confinement. This belated attempt to change the nature of the claim in response to a potentially dispositive motion is rejected, and the Court concludes that plaintiff has not properly stated in his pleadings any claim relating to denial of visitation in May, 1992.
Plaintiff alleges that defendants Cape Girardeau County, Copeland, Hines and Hurst "acquiesced in and expressed ratification of the conduct of the other defendants since said defendants have made no reprimands, no discharges, no changes in policy or practice, and no admissions of error" relative to the events alleged in the complaint. Second Amended Complaint, ¶ 84. Defendant Hines has filed an affidavit stating that he has no personal knowledge of and did not take any action with regard to the specific conduct alleged by plaintiff in his complaint. Defendant Hurst's affidavit states that he had no personal contact with plaintiff while he was in solitary. In his affidavit (¶ 3), defendant Copeland states that he "had no personal or affirmative contact or knowledge of any specific conduct regarding the alleged incidents which took place during the time of Plaintiff's confinement."
There can be no liability of either the supervisory defendants or of the County on the basis of any underlying claims of which the Court has previously disposed. As to the particular remaining claims concerning the use of allegedly excessive force on January 5, 1992 and the alleged denial of medical attention on January 5, 1992, plaintiff has alleged no basis for the liability of the County, Copeland, Hines or Hurst. These specific instances are not alleged to have occurred pursuant to any custom or policy, or with the three supervisors' "deliberate indifference or tacit authorization of the offensive acts by failing to take remedial steps following notice of a pattern of such acts by his subordinates." Wilson v. City of North Little Rock, 801 F.2d 316, 322 (8th Cir.1986) (emphasis added). The County and the three supervisory defendants are therefore entitled to summary judgment on the medical and excessive force claims, which remain pending only as to defendants Morgan and Rich. Plaintiff has not alleged the personal involvement or responsibility of any particular defendant for the limitations on plaintiff's exercise opportunities, but the claim is construed as one challenging the custom or policy governing the provision of such opportunities. The claim is therefore construed as one against Cape Girardeau County alone.
Plaintiff appears to attempt to assert a claim against the County based on its alleged underfunding of the jail facility. Lieutenant Hurst's affidavit states that the jail is well funded by the County and that in no way do the inmates suffer due to a lack of funding by the County. The affidavits of each of the Commissioners states that the operating budget for the jail is approximately $200,000, exclusive of salaries, utility expenses and the cost of the building itself, and attest that the commission's budgeting decisions on behalf of the county are based on the commission's "best judgment and discretion" following investigation of the needs of each county facility. The Commissioners themselves have been found to have legislative immunity from the claims asserted against them by plaintiff, including any claim concerning the adequacy of the jail's funding. Plaintiff's response to the summary judgment motion does not demonstrate that plaintiff has any evidence with which to make a submissible claim against the County itself relating to the jail budget, even assuming that plaintiff has standing to assert a claim *1235 for damages based on his allegations of underfunding. The Court concludes as a matter of law that defendants are entitled to summary judgment with respect to this claim.
Finally, the Court determines that plaintiff's conclusory allegation in Count II of a conspiracy among the defendants to violate plaintiff's civil rights is subject to disposition as a matter of law. First, where the Court has otherwise disposed of most of plaintiff's underlying claims of rights violations, there can be no liability for an alleged conspiracy. Second, plaintiff's allegations of conspiracy are general and inspecific, and are therefore insufficient to state a claim upon which relief might be granted, particularly as to the remaining claims concerning particular alleged instances of excessive force and denial of medical care, and the jail's exercise policy. Count II of the second amended complaint will therefore be dismissed.

Conclusion
Based on its construction of the second amended complaint, and all the foregoing analysis and discussion, only the following claims remain for trial. First is plaintiff's claim against defendants Morgan and Rick for the alleged use of excessive force on January 5, 1992, both on the constitutional theory asserted in Count I and the state law tort theory asserted in Count III. Second is plaintiff's claim against defendants Morgan and Rich concerning the alleged denial of medical attention on January 5, 1992. Lastly remains plaintiff's claim against Cape Girardeau County concerning the adequacy of the opportunities for exercise afforded to plaintiff during his pretrial detention at the county's jail. All other claims are disposed of, and the evidence at trial shall be limited to the remaining three issues here delineated.
Accordingly,
IT IS HEREBY ORDERED that defendants' motion to dismiss [Doc. # 49] and first amended motion to dismiss [Doc. # 50] are denied as moot in light of the filing of defendants' second amended motion to dismiss.
IT IS FURTHER ORDERED that defendants' second amended motion to dismiss [Doc. # 51] is granted in part and denied in part.
IT IS FURTHER ORDERED that defendants' motion for summary judgment [Doc. # 48] is granted in part and denied in part.

PARTIAL JUDGMENT
Pursuant to the order entered herein this day,
IT IS HEREBY ORDERED, ADJUDGED and DECREED that all claims against defendants Huckstep, Bock and Younghouse are dismissed for failure to state a claim upon which relief can be granted.
IT IS FURTHER ORDERED, ADJUDGED and DECREED that all prayers for injunctive relief are dismissed and stricken as moot.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that any allegations made by plaintiff with respect to proceeding on behalf of a plaintiff class are dismissed from the second amended complaint.
IT IS FURTHER ORDERED, ADJUDGED and DECREED that any and all claims concerning the following are dismissed for failure to state a claim:
 the jail's alleged policies concerning where inmates must or may not sleep;
 the jail's alleged policy of "locking down" North Block inmates in their cells each afternoon and not allowing them telephone access during that time;
 the alleged inadequacy of the jail's law library;
 the removal of plaintiff's clothing upon placement in isolation confinement;
 plaintiff's alleged receipt of only cold food while in isolation confinement;
 verbal harassment while in isolation confinement;
 plaintiff's exposure, while naked, to jail officers and other prisoners while in isolation confinement;
 the denial of a shower upon plaintiff's release from isolation confinement on July 24, 1992;

*1236  the alleged exposure to raw sewage while in isolation confinement;
 defendant Holshouser's failure to deliver plaintiff's lunch on or about July 28, 1992; and
 the denial of visitation with plaintiff's mother on an occasion in May, 1992.
IT IS FURTHER ORDERED, ADJUDGED and DECREED that summary judgment is entered in favor of all defendants and against plaintiff on all claims concerning the following:
 the denial of clothing, bedding and toiletries while plaintiff was in solitary isolation confinement;
 the lack of running water while plaintiff was in solitary isolation confinement;
 the denial of a blanket while plaintiff was in solitary isolation confinement;
 the decision to place plaintiff in isolation confinement arbitrarily, without notice, without a hearing or specific findings, with no right to counsel, and without an independent investigation of the charges;
 the denial of visitation with plaintiff's mother on July 25, 1992; and
 the alleged inadequacy of the operating budget of the Cape Girardeau County Jail.
IT IS FURTHER ORDERED, ADJUDGED and DECREED that Count II of the second amended complaint is dismissed.
IT IS FURTHER ORDERED, ADJUDGED and DECREED that Norman Copeland, Leonard Hines, Michael Hurst, Robert Scott, John Holshouser, Officer Stoffregen, Officer Hampton and Officer J.P. Mulcahy are dismissed as parties-defendant.
NOTES
[1] Both with respect to this and later similar incidents, the Court concludes as a matter of law that the removal of plaintiff's clothing following plaintiff's admitted refusal to remove it himself does not, without more, state a constitutional claim. The Court separately analyzes the extent of physical force employed in accomplishing the removal, as well as the denial of clothing during the isolation confinement.
[2] Plaintiff also asserts in his affidavit that when he was placed in East Confinement on July 22 there was raw sewage on the floor, that it remained through his release from the cell on July 24, and that he was not provided any materials and equipment with which to properly clean the cell. This allegation is notably absent from plaintiff's second amended complaint, and the Court therefore does not characterize it as a properly asserted basis for a separate constitutional claim.
[3] The Eighth Circuit has recognized that convicted prisoners may have an Eighth Amendment claim for exposure to raw sewage, to which a reasonable indifference standard would be applicable. Burton v. Armontrout, 975 F.2d 543 (8th Cir.1992). In the present context, however, a pretrial detainee's claim is subject to the different Fourteenth Amendment standard enunciated in Wolfish.