**Souvannaseng S. BORIBOUNE,**
**Petitioner–Appellant,**

v.

**Jon LITSCHER, et al., Respondents–**
**Appellees.**

No. 03–1747.

United States Court of Appeals,
Seventh Circuit.

Submitted Dec. 3, 2003.*

Decided Dec. 29, 2003.

Souvannaseng S. Boriboune, pro se, Boscobel, WI, for Petitioner–Appellant.

Before BAUER, EASTERBROOK, and DIANE P. WOOD, Circuit Judges.

### ORDER

Souvannaseng Boriboune, who is confined at the Wisconsin Secure Program Facility (WSPF, formerly known as Supermax Correctional Institution), brought suit

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

under 42 U.S.C. § 1983 and state law alleging that prison officials violated his rights when they disciplined him for communicating on the telephone in a language other than English without first receiving approval from his social worker. The district court dismissed Boriboune's federal claims, declined to exercise supplemental jurisdiction over his remaining state claims, and dismissed his complaint. We affirm.

Boriboune is originally from Laos and often telephones family and friends who speak primarily Lao. When Boriboune arrived at WSPF in January 2002, prison officials permitted him to speak Lao on the telephone. But in May 2002 the facility instituted a new policy prohibiting inmates from communicating by telephone in a language other than English. The policy includes an exception for an inmate who obtains approval from his social worker. When the policy went into effect, Boriboune wrote to his social worker asking whether the policy applied to him and seeking approval to speak in Lao. Boriboune sent several letters to his social worker between June and August 2002. Though his letters were generally ignored, Boriboune received one response on June 30 directing him "to wait."

Meanwhile, Boriboune continued to call his mother and speak to her in Lao, and, allegedly in retaliation for speaking to his mother in Lao, he received three conduct reports for speaking a non-English language without approval. The first report was dismissed and converted to a warning about the English-only policy, because prison officials were not sure that Boriboune had been aware of the new rule. The second and third reports, however, resulted in guilty decisions and sanctions (60 days' program segregation and the loss of fourteen days' telephone privileges for the second infraction, and 120 days'

program segregation and the loss of two telephone calls for the third). Boriboune filed numerous complaints challenging the conduct reports and sanctions. All were dismissed, one with an instruction to Boriboune to contact his social worker to obtain permission to speak Lao. In August, several days before the Conduct Adjustment Board reached a decision on his third conduct report, Boriboune at last received permission from his social worker to speak Lao.

■ On appeal Boriboune contends that the First Amendment entitles him to talk on the telephone in Lao. But though prisoners have a right under the First Amendment to communicate with others outside the prison, see *Thornburgh v. Abbott*, 490 U.S. 401, 407, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989), we have expressed doubt that this amounts to an unqualified right for a prisoner to have access to a telephone, see *Arsberry v. Illinois*, 244 F.3d 558, 564–65 (7th Cir.2001) ("Not to allow [prisoners] access to a telephone might be questionable on other grounds, but to suppose that it 'would infringe the First Amendment would be doctrinaire in the extreme.'"). See also *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir.1994) (concluding that prisoners have no entitlement to unlimited use of a telephone); *Benzel v. Grammer*, 869 F.2d 1105 (8th Cir.1989) (same); *Lopez v. Reyes*, 692 F.2d 15, 17 (5th Cir.1982) ("A prisoner in maximum security has no right to unlimited telephone use."). Even those courts that have concluded that prisoners have some First Amendment right to telephone access have recognized that under *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), this right may be limited as long as the regulation is reasonably related to a legitimate penological interest. *Johnson v. California*, 207 F.3d 650, 656 (9th Cir.2000); *Washington*, 35 F.3d at 1100.

In this case, the WSPF officials noted on one of Boriboune's conduct reports that prohibiting prisoners from talking on the telephone in a language other than English without prior approval was justified by the prison's need to control "secret means of communication" to help "prevent conspiracies and escapes." This is certainly a legitimate penological concern. The only question is thus whether the prison's policy is reasonably related to that interest. In that connection, it is significant that the policy does not prohibit *all* telephone communication in a language other than English; it simply requires that an inmate must have prior permission before doing so. This would presumably enable to prison to monitor his calls in a manner equivalent to the monitoring of English-language calls, if it thought this was advisable. This policy also incorporates reasonable limits: it does not, for example, affect Boriboune's ability to receive visits or mail from his family and friends. Under these circumstances, we conclude that the prison's policy is reasonably related to its interest in maintaining security. *See also Martin v. Tyson*, 845 F.2d 1451, 1458 (7th Cir.1988) (per curiam) (upholding policy limiting pretrial detainee's telephone access to every other day); *Pope v. Hightower*, 101 F.3d 1382, 1385 (11th Cir.1996) (upholding policy limiting use to pre-approved calling list of at most ten people); *Washington*, 35 F.3d at 1100 (upholding policy limiting use to pre-approved list of at most thirty people); *Benzel*, 869 F.2d at 1108–09 (upholding policy limiting use by inmates in disciplinary segregation to pre-approved list of at most three people).

*Kikumura v. Turner*, 28 F.3d 592, 596 (7th Cir.1994), does not compel a contrary conclusion. In that case, we considered the constitutionality of a policy that prohibited inmates from receiving any materials written in a language other than English. *Id.* at 595–96. The policy at issue permitted no alternatives, such as screening or translating non-English materials, to allow prisoners access. *Id.* at 599. In holding the policy unconstitutional, we concluded only that "summary exclusion of foreign language materials is unconstitutional." *Id.* at 598. We also noted that our decision was "narrowly limited" to the situation in which "a prison makes no effort at all to accommodate the constitutional rights of prisoners native in languages other than English." *Id.* at 598. *See also Thongvanh v. Thalacker*, 17 F.3d 256, 259–60 (8th Cir.1994) (concluding that prison regulations prohibiting inmates from receiving any mail in a language other than English are unconstitutional); *Ramos v. Lamm*, 639 F.2d 559, 581 (10th Cir.1980) (same). In contrast, the policy followed in the WSPF includes a reasonable accommodation–permission from a social worker–that allows a prisoner to speak in a foreign language on the telephone.

■ We also reject Boriboune's argument that the district court erred in concluding that his complaint fails to state a claim for a violation of due process. Boriboune was punished for ignoring the telephone policy, but the sanctions imposed–short–term loss of telephone privileges and disciplinary segregation–implicated no liberty interest and triggered no due process protections. *See Sandin v. Conner*, 515 U.S. 472, 483–84, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Boriboune tries to circumvent this result by claiming that his disciplinary violations also resulted in a loss of good-time credits. *See Piggie v. Cotton*, 344 F.3d 674, 677 (7th Cir.2003) (loss of earned-credit time implicates due process protections). The documents he attached to his complaint, however, confirm that his punishments were limited to short-term restrictions on telephone use and placement in segregation.

AFFIRMED.