646 A.2d 756

PRECISION EQUITIES, INC., Appellant,

v.

FRANKLIN PARK BOROUGH ZONING HEARING
BOARD and the Borough of Franklin Park.

Commonwealth Court of Pennsylvania.

Argued June 8, 1994.

Decided Aug. 16, 1994.

David F. Toal, for appellant.

Ira Weiss, for appellee, Borough of Franklin Park.

Before CRAIG, President Judge, and DOYLE, McGINLEY, PELLEGRINI, FRIEDMAN, KELLEY and NEWMAN, JJ.

FRIEDMAN, Judge.

Precision Equities, Inc. (Applicant) appeals from an order of the Court of Common Pleas of Allegheny County affirming a decision of the Zoning Hearing Board (Board) of the Borough

of Franklin Park (Borough) which denied Applicant's validity challenge to the Borough's Zoning Code (Code). We affirm.

Applicant, a land development company, owns two parcels of land in the Borough. The first parcel, known as Castletown Estates, is primarily zoned R–1, a designation which permits single-family residential development on 40,000 square foot lots. A small portion of Castletown Estates is zoned M–1, a mixed residential and commercial use designation, which permits single-family residential development on 6,500 square foot lots. The second parcel, Squire Ridge, is zoned R–2, a designation which permits single-family residential development on 20,000 square foot lots. Squire Ridge is in the third and last phase of a three-phase development.

On January 22, 1992, Applicant filed a challenge to the validity of the Code, pursuant to section 916.1 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10916.1, contending that the Code does not provide for a fair share of small residential lots and is, therefore, unconstitutionally exclusionary. Applicant sought a curative amendment to reclassify both Castletown Estates and Squire Ridge as R–4, a designation which would allow single-family development on 6,500 square foot lots, thereby increasing the potential number of lots in Castletown Estates from 51 to 173 and in Squire Ridge from 28 to 70. The Borough intervened, taking an active part in the proceedings.

Following several hearings, the Board rendered a decision denying the challenge on November 19, 1992. In its decision, the Board determined:

> Franklin Park has provided its fair share of various housing types within the Borough including 6,500 square foot lots. (T. 589)

(Board's Findings of Fact, No. 29.)

> Although generally speaking, the cost of a house and lot for loan purposes should be at least four times the cost of the lot, there is nothing which would prevent a more expen-

sive home from being constructed assuming the neighboring homes would support a higher price. (T. 409–411; 520, 521)

(Board's Findings of Fact, No. 33.)

The relief sought by the Developer does not address the issue of a fair share of low to moderate income housing because permitting single family dwellings on 6,500 square foot lots will not guarantee housing to persons of low to moderate income and especially in view of Developer's admission that the goal of development is maximizing profit.

(Board's Findings of Fact, No. 34.)

The Zoning Ordinance does not effectively preclude Developer's proposed use, effect an exclusionary result or reflect an exclusionary intent on behalf of the Borough.

(Board's Conclusions of Law, No. 11.)

The Challenger–Developer has not satisfied its burden of proof. Therefore, the challenge is denied.

(Board's Conclusions of Law, No. 12.) Applicant appealed to the trial court which affirmed the Board's denial of Applicant's validity challenge.

On appeal to this court,[1] the essence of Applicant's argument is that the Borough has an obligation to provide a

1. Our scope of review of a zoning hearing board decision is limited to determining whether the zoning hearing board committed a manifest abuse of discretion or erred as a matter of law. *Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983).

We note that a zoning ordinance is presumed to be valid and that the party challenging the constitutionality of a zoning ordinance bears the burden of proving otherwise. *BAC, Inc. v. Board of Supervisors of Millcreek Township,* 534 Pa. 381, 633 A.2d 144 (1993). However, the burden of proof changes where the challenger shows an intent to discriminate against individuals on the basis of race, in which case judicial deference to legislative decision making is no longer justified and courts will strictly scrutinize the challenged regulation. *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977); *Orange Lake Assocs. v. Kirkpatrick,* 21 F.3d 1214 (2d Cir.1994). Here, Applicant urges us to reverse the burden of proof, arguing that the Code should be presumed unconstitutional because its lot size provisions increase the cost of housing and have a disproportionate impact on racial minorities. For reasons set forth later in this opinion, we reject this approach.

fair share of affordable single-family detached housing which it has failed to meet.[2] At hearings before the Board, Applicant urged the Board to extend Pennsylvania's exclusionary zoning law to include a determination that the Borough has an obligation, through zoning, to provide the opportunity for affordable, new single-family dwellings. (S.R.R. at 48b, 215–222b, 226–227b.) [3]

This matter was brought to the Board as a validity challenge, pursuant to the MPC. As the Pennsylvania Supreme Court pointed out in its recent decision, *BAC, Inc. v. Board of Supervisors of Millcreek Township,* 534 Pa. 381, 633 A.2d 144 (1993), Pennsylvania courts assess such challenges by applying a substantive due process analysis. We are guided by our Supreme Court's analysis in *BAC, Inc.,* where the Court reviewed the analytical method formulated in *Surrick v. Zoning Hearing Board of Upper Providence Township,* 476 Pa. 182, 382 A.2d 105 (1977) for determining whether a zoning ordinance is unconstitutionally exclusionary.

> The procedure we devised grew out of a series of decisions relating back to two constitutional principles. The first is that individuals have the right to enjoy private property. Pa. Const. art. I, § 1. The second is that any governmental exercise of police power to interfere with this right must be reasonable to comply with federal due process requirements. U.S. Const. amends. V and XIV; *Girsh Appeal,* 437 Pa. 237, 241 n. 3, 263 A.2d 395, 397 n. 3 (1970). The latter principle demands that a zoning ordinance be substantially related to the protection of the public welfare. *National*

2. Before the Board and in briefs to this court, Applicant questioned the legitimacy of the Borough's regulations requiring concrete curbs, limiting development of slopes and requiring preservation of woodlands. The Board determined, and we agree, that Applicant did not separately contest these regulations. Thus, these items are considered only as part of the overall validity challenge.

3. Applicant contends that the single-family detached home is a preferred housing type in the Borough and that "having designated the preferred housing type, the municipality must make them affordable." (S.R.R. at 217b.) We find no support for this proposition.

*Land and Investment Co. v. Easttown Township Bd. of Adjustment,* 419 Pa. 504, 522, 215 A.2d 597, 607 (1965).

These core principles inspired our decisions in a line of cases collectively embracing the following view: Where a municipal subdivision is a logical place for development to occur, it must assume its rightful part of the burdens associated with development, neither isolating itself nor ignoring the housing needs of the larger region. *See Township of Willistown v. Chesterdale Farms, Inc.,* 462 Pa. 445, 341 A.2d 466 (1975); *Concord Township Appeal,* 439 Pa. 466, 268 A.2d 765 (1970); *Girsh Appeal,* 437 Pa. 237, 263 A.2d 395 (1970); *National Land* 419 Pa. 504, 215 A.2d 597 (1965). This philosophy finds concrete expression in the "fair share" principle, which this Court has adopted. It requires local political units to. "plan for and provide land use regulations which meet the legitimate needs of all categories of people who may desire to live within its boundaries." *Surrick,* 476 Pa. at 189, 382 A.2d at 108.

A municipality violates this principle if it practices exclusionary zoning, which could exist in one of two forms. A particular use could be totally excluded. Such was the case in *Girsh Appeal,* where the ordinance made no provision for multiunit apartment buildings. Alternatively, a zoning ordinance could partially exclude a use to such an extent that it engages in "tokenism" or "selective admission." That was the objection we had in *Willistown,* where 80 of the township's 11,589 acres were set aside for apartments.

In order to facilitate the review of ordinances alleged to be exclusionary, Surrick synthesized a three-part analysis which grew out of the approach taken in earlier cases. The first two parts raise threshold inquiries focusing on a municipality's propensity for population growth and its capacity to accommodate additional development. *Surrick,* 476 Pa. at 192, 382 A.2d at 110. If a community is a logical area for development and its present level of development does not preclude further development, then it is necessary to conduct the third inquiry, which focuses on determining the

exclusionary impact of the zoning ordinance. *Id.* at 194, 382 A.2d at 111.

*BAC, Inc.,* 534 Pa. at 384–85, 633 A.2d at 146–47.

Here, the parties agree that the Borough is a logical place for development and that its present level of development does not preclude further development; they disagree over whether the Borough meets the third prong of the *Surrick* analysis: whether the Borough has zoned to provide for its fair share of future development. We reiterate what our Supreme Court said in *BAC, Inc.:*

> In Surrick, we recognized a clear distinction between restrictions on uses of property and exclusions of classes of people. We stressed that only the former is the proper subject of the analysis we synthesized. This is because it flows from the constitutionally protected right to own and enjoy property. Thus, it grew out of a line of cases striking down zoning schemes for restricting or excluding certain uses of property, not classes of people. *Surrick,* 476 Pa. at 193 n. 10, 382 A.2d at 110–11 n. 10.

*Id.* at 386, 633 A.2d at 147.

> Consistent with Pennsylvania case law, the MPC provides: The provisions of zoning ordinances shall be designed:
>
> . . . .
>
> (4) To provide for the use of land within the municipality for residential housing of various dwelling types encompassing all basic forms of housing, including single-family and two-family dwellings, and a reasonable range of multifamily dwellings in various arrangements, mobile homes and mobile homes parks, provided, however, that no zoning ordinance shall be deemed invalid for the failure to provide for any other specific dwelling type.

Section 604 of the MPC, 53 P.S. § 10604.

In support of its position, Applicant argues that the Borough has not made adequate provision for single-family detached housing for low-to-moderate income families, which Applicant equates with discrimination against minorities, and that land zoned R–4 (one of the zoning classifications permit-

ting small lot development) comprises only 1.8 percent of the Borough's total land area. The Borough responds that small lot single-family housing is not a protected housing type under the MPC, but that even if it were, the Borough has met its obligation. We agree with the Borough.

Of the Borough's 8,970 acres, 10.3 percent, or 927 acres, is zoned to permit development of various types of housing, including single-family, multiple family, townhouses and mobile homes, on parcels of 6,500 square feet or less. (Board's Findings of Fact, Nos. 12 and 36.) Approximately half of the Borough's land is developed. (Board's Findings of Fact, No. 19.) Of the remaining land, only about 1,796 acres is developable; the proportion of this vacant developable land zoned to permit residential development on small lots is also 10.3 percent. (Board's Findings of Fact, No. 14.) Applicant urges us to accept its calculation that only 1.8% of the Borough's land is available for affordable single-family detached housing and to reject the Board's findings that more than 10 percent of all the land in the Borough, as well as more than 10 percent of the vacant developable land, is available for various types of residential development on small lots. This we cannot do. We must reject applicant's request for two reasons: first, because we may not disturb the findings of the Board where, as here, the record indicates that those findings are supported by substantial evidence, *Appeal of M.A. Kravitz Co., Inc.*, 501 Pa. 200, 460 A.2d 1075 (1983), and second and more fundamental, because Applicant misconstrues the Borough's obligation under Pennsylvania's exclusionary zoning law. Under Pennsylvania law, the Borough is required to provide for its fair share of various housing types; it is not required to provide a range of lot sizes for single-family housing, or for any other dwelling type.[4] Thus, Applicant's

4. Applicant provides no guarantee that its curative amendment would result in affordable single-family housing in the Borough. The New Jersey Supreme Court, which has taken a more aggressive approach requiring municipalities to provide housing for low and moderate income individuals, has recognized that reduction in lot size alone will not normally result in housing affordable by low and moderate income people. In *Southern Burlington County N.A.A.C.P. v. Township of*

challenge must fail because Applicant does not prove that the Borough's zoning ordinance fails to provide its fair share of various dwelling types as required by the MPC and Pennsylvania case law.

Applicant, however, seeks to expand this exclusionary zoning case beyond Pennsylvania's traditional substantive due process analysis to an equal protection challenge, contending that because racial minorities have lower incomes than whites, the Code, through its lot size regulations, really classifies individuals on the basis of race, a suspect classification, and violates the equal protection clauses of the Pennsylvania (Const. Art. 1 §§ 1, 26) and United States (U.S. Const. amend. XIV) constitutions. Therefore, argues Applicant, we must apply a strict scrutiny analysis and require the Borough to show a compelling governmental interest for its zoning regulations. We disagree. A zoning ordinance

> will not be held unconstitutional solely because it may result in a racially disproportionate impact. "Disproportionate impact is not irrelevant, but it is not the sole touchstone of an invidious racial discrimination." Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.

*Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 264–65, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977), quoting *Washington v. Davis*, 426 U.S. 229, 242, 96 S.Ct. 2040, 2049, 48 L.Ed.2d 597 (1976).[5] In *Arlington Heights*, the U.S.

*Mount Laurel*, 92 N.J. 158, 456 A.2d 390 (1983) (Mount Laurel III), the Supreme Court of New Jersey recognized that communities may be required to use affirmative measures, such as subsidies, incentives, mandatory set-asides or development of least cost housing alternatives, to meet the fair share obligation for development of affordable housing which New Jersey imposes on municipalities. As noted in *BAC, Inc.*, Pennsylvania's approach is different, looking to the uses of land provided for in a zoning ordinance rather than attempting to use zoning as a socio-economic tool to create housing for various classes of people. Considering the difficulty which New Jersey has had implementing its fair share strategy, we believe ours is the better approach.

5. In *Arlington Heights*, the United States Supreme Court discussed the presumption of constitutionality which attaches to most legislative actions:

Supreme Court commented: "In many instances, to recognize the limited probative value of disproportionate impact is merely to acknowledge the 'heterogeneity' of the Nation's population." *Id.* at 266 n. 15, 96 S.Ct. at 2060 n. 15. Here, Applicant's conclusory allegations do not show a significant connection between the lot size regulations and lack of affordable housing for racial minorities and certainly do not show discriminatory intent.[6] An additional problem with Applicant's equal protection argument is that Applicant seeks to assert the constitutional rights of low-to-moderate income or minority third persons, who are not parties to this action. *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).[7]

> [I]t is because legislators and administrators are properly concerned with balancing numerous competing considerations that courts refrain from reviewing the merits of their decisions, absent a showing of arbitrariness or irrationality. But racial discrimination is not just another competing consideration. When there is proof that a discriminatory purpose has been a motivating factor in the decision, this judicial deference is no longer justified.
> *Id.* at 265–66, 96 S.Ct. at 2059–60.

**6.** The connection claimed by Applicant is simply too tenuous to support a conclusion that reduction of the lot sizes in Applicant's developments would lead to more affordable housing for the region's racial minorities. *See, e.g.,* Hartnett, James J. *Affordable Housing, Exclusionary Zoning and American Apartheid Using Title VIII to Foster Statewide Racial Integration,* 68 N.Y.U.L.Rev. 89 n. 221, (April 1993) (In New Jersey, typical purchaser of affordable housing, built in response to that state supreme court's fair share directives, is overwhelmingly white and suburban in origin).

**7.** In *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), the United States Supreme Court noted that a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights and interests of third parties." *Id.* at 499, 95 S.Ct. at 2205. We recognize that Congress may grant standing to contest the violation of a federal statute to persons who would otherwise be barred by traditional standing rules. For example, the federal Fair Housing Act, 42 U.S.C. § 3601 et seq. broadly defines an aggrieved person who may sue for violation of the act. *See, e.g., Horizon House Developmental Services, Inc. v. Township of Upper Southampton,* 804 F.Supp. 683 (E.D.Pa.1992), *aff'd,* 995 F.2d 217 (3d Cir. 1993) (providers of housing for the handicapped have standing under the Fair Housing Act to challenge local law imposing a 1000 foot distance requirement for group homes).

■ Thus, Applicant's equal protection argument [8] cannot succeed and, as we have already discussed, Applicant's validity challenge also fails under Pennsylvania's traditional substantive due process analysis.

Accordingly, we affirm.

## ORDER

AND NOW, this 16th day of August, 1994, the order of the Court of Common Pleas of Allegheny County, dated October 18, 1993, is affirmed.

---

8. Although not specifically raised in its validity challenge, Applicant argues that the Pennsylvania Affordable Housing Act, Act of December 18, 1992, P.L. 1376, 35 P.S. §§ 1691.1–1691.6, in conjunction with the MPC, places a duty on the Borough to zone for and accept a fair share of the region's single-family detached housing which would be affordable by low-to-moderate income individuals. We do not agree. The Pennsylvania Affordable Housing Act's directive to the Pennsylvania Housing Advisory Committee, established under the act to advise the Department of Community Affairs on coordination of federal, state and local resources, to consider, among other things, removal of regulatory barriers to affordable housing does not require the Borough to reduce the minimum square footage required for single-family development on Applicant's land, particularly where, as here, other land is available for small lot single-family development and for multi-family development and where there is not evidence that Applicant would build affordable housing for this group of people. Applicant also refers to a violation of the federal Fair Housing Act, 42 U.S.C. § 3601 et seq., but does not tell us what provisions of the Fair Housing Act the Borough's zoning regulations are supposed to violate. If pertinent, the Fair Housing Act might benefit Applicant's case because the definition of an aggrieved person is broader in that act than in traditional standing cases such as *Warth v. Seldin* and because courts have determined that evidence of discriminatory intent is not required to prove a violation of the Fair Housing Act. *Orange Lake Associates v. Kirkpatrick*, 21 F.3rd 1214 (2nd Cir.1994) and *Metropolitan Hous. Dev. Corp. v. Village of Arlington Hts.*, 558 F.2d 1283 (7th Cir.1977), *cert. denied*, 434 U.S. 1025, 98 S.Ct. 752, 54 L.Ed.2d 772 (1978). In any case, we do not believe that a validity challenge is the proper place to pursue a Fair Housing Act violation, nor do we believe that such a violation has occurred here.