794 A.2d 428 (2002)
Sandra L. FEIGLEY, Petitioner,
v.
PENNSYLVANIA PUBLIC UTILITY COMMISSION (AT & T/Verizon), Respondent.
C.U.R.E. Of Pennsylvania, Petitioner,
v.
Pennsylvania Public Utility Commission, Respondent.
Commonwealth Court of Pennsylvania.
Submitted on Briefs November 7, 2001.
Argued November 7, 2001.
Decided March 12, 2002.
*429 Angus R. Love, Philadelphia, for petitioner.
Susan D. Colwell, Harrisburg, for respondent.
Alan Kohler, Harrisburg, for intervenor.
Before DOYLE, Senior Judge,[1] COLINS, President Judge, SMITH-RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, KELLEY, Senior Judge,[2] and LEADBETTER, Judge.
OPINION BY President Judge COLINS.
In the two above-captioned separately docketed matters that were consolidated for argument before this Court, Sandra L. Feigley (Feigley) and The Citizens United for Rehabilitation of Errants (C.U.R.E.),[3] collectively Petitioners, petition for review of the April 19, 2001 opinion and order issued by the Pennsylvania Public Utility Commission (PUC) at Docket No. C-00981434. Said order denied Feigley's and C.U.R.E.'s exceptions and adopted, with modification, the Administrative Law Judge's (ALJ) June 27, 2000 recommended decision, and designated the matter "closed." The factual background of the present appeal follows.
On April 21, 1998, Feigley filed two complaints with the PUC against AT&T and against Bell Atlantic-Pennsylvania, respectively, alleging unreasonableness and unconstitutionality of rates charged by AT&T and Bell Atlantic to recipients of telephone calls from inmates housed by the Pennsylvania Department of Corrections (Corrections Department).[4] In her complaints, Feigley challenges the rates she pays for telephone calls received from her husband, who is incarcerated under the supervision of the Corrections Department. The record indicates that AT&T provided inmate-accessible telephone service under a contract that was opened for bidding by the Commonwealth acting through the Corrections Department. Calls by inmates are required to be made through this specialized phone system. The calls that are the subject of the instant complaints are those both where AT&T was the primary contractor and those in which AT&T was subcontractor to Verizon.
Feigley's counsel subsequently transferred his representation to Dianna Hollis and Robert Franz, president and member of C.U.R.E., respectively, while Feigley proceeded pro se. Hearings were held in the matter, and additional briefs were filed by Feigley through 1999. On December *430 21, 1999, a final hearing was conducted after which Hollis and C.U.R.E. were allowed to officially intervene in the action.
Feigley testified that an inmate's placing a telephone call results in a $3.30 charge regardless of the length of the call, while AT&T representatives testified that the charge for calls placed from inmates in a state correctional facility consists of: (1) the prison collect call surcharge of $3.00; (2) the pay phone compensation surcharge of $.30; and (3) the transport charge, increased from $.27 to $.45 per minute as of August 6, 1999. Hollis and Franz, appearing on behalf of C.U.R.E., testified about the quality and nature of inmate telephone calls and their own excessive bills for calls from relatives incarcerated within the Corrections Department system.
On June 27, 2000, the ALJ issued his recommended decision denying Feigley's complaint. On July 12, 2000, Feigley filed exceptions to the decision, and on July 19, 2000, C.U.R.E. filed exceptions. AT&T replied to said exceptions on July 27, 2000. On April 19, 2001, the PUC issued its opinion and order denying Feigley's and C.U.R.E.'s exceptions and adopting the ALJ's recommended decision with modification as per the opinion.[5] This appeal followed.[6]
On appeal, Petitioners challenge the reasonableness and constitutionality of the rates charged by AT&T to recipients of collect telephone calls from inmates housed by the Corrections Department. Specifically, Petitioners aver that since 1988, the Commonwealth has contracted with a single telecommunications provider, AT&T, for the inmate telephone system and that this monopoly violates the federal Telecommunications Act of 1996[7] and the Pennsylvania Public Utility Code.[8] Petitioners also contend that AT&T's rates for inmate telephone calls are not just and reasonable, that said rates exceed the actual cost of providing telephone service to inmates, and that during the present litigation, AT&T raised its rates for recipients of inmate telephone calls by increasing the per minute charge from between $.16 and $.31 to a flat rate of $.45 per minute. Petitioners contend that an average ten-minute inmate call costs AT&T approximately $6.20 before taxes, $3.00 of which is a commission that goes to the Commonwealth, generating approximately $5 million annually. Although Petitioners acknowledge that the Commonwealth distributes $3 million to the Inmate General Welfare Fund, they contend that the remaining millions go to the Commonwealth's general fund.
It is further argued by Petitioners that AT&T's rates are not comparable to those charged in other states for like services, that Pennsylvania has one of the highest surcharge rates of the states surveyed, and that the propriety of the bidding *431 procedures between AT&T and the Commonwealth is questionable. This disparity, according to Petitioners, is particularly intolerable considering the poor quality of the voice transmission, and the fact that the inmate's conversation is frequently interrupted by taped messages that trigger the security system to disconnect the call, thereby necessitating placing the call again with the recipient incurring another surcharge. Finally, Petitioners argue that AT&T's rates are unconstitutional in that they violate the First Amendment rights of an inmate's family and friends by impeding their ability to communicate with the incarcerated family member, and that AT&T's rates violate their equal protection rights by subjecting recipients of inmate telephone calls to excessive charges not imposed on other users.
Upon review, we find that substantial evidence supports the PUC's adoption, with modification, of the ALJ's recommended decision concluding that Petitioners failed to meet their burden of proving that AT&T's rates as applied to correctional facility inmate collect calls are excessive, unjust, unreasonable, discriminatory, and unconstitutional. The record includes Respondent's submission of statistical data including, but not limited to, 1998 and 1999, indicating that the rates for inmate collect calls are comparable to those for collect calls made from public pay phones, and that the difference between an inmate collect call and one made from a public pay phone is minimal. The record also supports the ALJ's determination that Petitioners failed to proffer objective evidence establishing that AT&T's rates for inmate collect calls were unjust and unreasonable as alleged.
We further concur with PUC's observation that with regard to telecommunications systems, the condition of incarceration subjects an inmate, as in the present matter of Feigley's husband, to "choices circumscribed by the operation of the Commonwealth contract and prison administrative policies under which the contract is carried out," and that the lack of competitive alternatives in carriers is an "unfortunate incidence of incarceration." As to Petitioners' averments that their First Amendment rights regarding freedom of speech are being violated, we concur with the PUC's conclusion that these allegations are not viable. Substantial evidence supports the PUC's adoption of the ALJ's determination that Petitioners have failed to prove that AT&T's rates for inmate collect telephone calls under its contract with Verizon are unreasonable and in violation of the Public Utility Code.
Similarly, we concur with the PUC's determination that Petitioners' other constitutional arguments are without merit. Petitioners aver that they represent a class of individuals, comprised of the family and friends of incarcerated persons, the majority of whom represent racial minorities against whom higher telephone rates are imposed than those charged to the public at large. In this regard, Petitioners argue that they are being treated as a "suspect class," thereby depriving them of their constitutional right to equal protection. Analogous equal protection arguments were raised by a land development company in Precision Equities, Inc. v. Franklin Park Borough Zoning Hearing Board, 166 Pa.Cmwlth. 607, 646 A.2d 756, 761 (1994), petition for allowance of appeal denied, 540 Pa. 588, 655 A.2d 518 (1995) (quoting Village of Arlington Heights v. Metro. Housing Development Corp., 429 U.S. 252, 264-65, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977)), wherein this Court stated:
[A zoning ordinance] will not be held unconstitutional solely because it may *432 result in a racially disproportionate impact. "Disproportionate impact is not irrelevant, but it is not the sole touchstone of an invidious racial discrimination. Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."
In the present matter, Petitioners have failed to establish that prison inmates, many of whom belong to racial minorities, are a suspect class, or that the AT&T rates for inmate collect telephone calls evince discriminatory intent against the inmates and their families and friends.
Finally, in considering the rights of inmates to telephone access, we reaffirm this Court's position in Chimenti v. Pennsylvania Department of Corrections, 720 A.2d 205, 213 (Pa.Cmwlth.1998), affirmed, 559 Pa. 379, 740 A.2d 1139 (1999), stating:
We remind petitioners that they have conceded before this court that there is no constitutional right to use the telephone.11
11. On the question of inmates rights regarding the use of telephones, the Sixth Circuit Court of Appeals has pointed out that....:
The Supreme Court has recognized that "`[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution.' Turner v. Safley, 482 U.S. [78] at 84 [107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)]... In fact, federal court opinions have previously held that persons incarcerated in penal institutions retain their First Amendment rights to communicate with family and friends. Morgan v. LaVallee, 526 F.2d 221, 225 (2d Cir.1975), and have recognized that "there is no legitimate governmental purpose to be attained by not allowing reasonable access to the telephone, and ... such use is protected by the First Amendment." Johnson v. Galli, 596 F.Supp. 135, 138 (D.Nev. 1984).
Nevertheless, an inmate "has no right to unlimited telephone use." Benzel v. Grammer, 869 F.2d 1105, 1108 (8th Cir.), cert. denied, 493 U.S. 895, 110 S.Ct. 244, 107 L.Ed.2d 194 (1989), citing Lopez v. Reyes, 692 F.2d 15, 17 (5th Cir.1982). Instead, a prisoner's right to telephone access is "subject to rational limitations in the face of legitimate security interests of the penal institution." Strandberg v. City of Helena, 791 F.2d 744, 747 (9th Cir. 1986). "The exact nature of telephone service to be provided to inmates is generally to be determined by prison administrators, subject to court scrutiny for unreasonable restrictions." Fillmore v. Ordonez, 829 F.Supp. 1544, 1563-64 (D.Kan.1993), aff'd, 17 F.3d 1436 (10th Cir.1994), and citing Feeley v. Sampson, 570 F.2d 364, 374 (1st Cir.1978), and Jeffries v. Reed, 631 F.Supp. 1212, 1219 (E.D.Wash. 1986).

Washington v. Reno, 35 F.3d 1093, 1099-1100 (6th Cir.1994).
In evaluating Petitioners' constitutional arguments herein, the foregoing rationale, that an inmate's right to telephone access is conditioned upon rational limitations in light of the correctional facility's legitimate security concerns is paramount.
Accordingly, the order of the PUC is affirmed.

ORDER
AND NOW, this 12th day of March 2002, in the above-captioned matters, the April 19, 2001 order of the Pennsylvania Public Utility Commission is affirmed.
*433 Dissenting Opinion by Judge SMITH-RIBNER.
I respectfully dissent from the majority's decision to affirm the order of the Public Utility Commission (PUC), which denied the exceptions filed by Petitioners Sandra L. Feigley and The Citizens United for Rehabilitation of Errants (C.U.R.E.) and adopted with modification the Administrative Law Judge's (ALJ) decision, concluding that it was supported by substantial evidence. The ALJ denied the formal complaint filed by Feigley, which challenged the reasonableness and constitutionality of rates charged by AT&T Communications of Pennsylvania, Inc. pursuant to its contract with the Commonwealth for collect telephone calls made by inmates confined in the Commonwealth's penal institutions. Citing the societal goal of controlling inmate behavior and the additional costs for security measures, the ALJ found that proof of inmate collect telephone call rates when compared to public pay phone collect call rates established that the inmate rates were reasonable and thus did not establish a prima facie case of disparate treatment of a protected class.
In concluding that the inmate collect telephone call rates charged are based upon rational limitations consistent with legitimate security concerns, the majority quoted from a decision by the Sixth Circuit Court of Appeals in Washington v. Reno, 35 F.3d 1093 (6th Cir.1994). The quoted text from Washington highlights this Dissenter's grave concerns about whether the inmate collect telephone call rates in this Commonwealth are in fact just and reasonable. This is so particularly in view of the estimated $5-6,000,000 commission which is turned over to the Commonwealth principally from revenue derived from families and others who accept collect calls from incarcerated persons. AT&T, originally the primary contractor selected to operate the prison inmate telephone system (later replaced by Verizon in 1999), must pay a commission pursuant to the contract, now at 47 percent of the gross billed revenue.[1] In 1988 the commission was 2-4 percent of gross billed revenue. The contract governs the entire inmate telephone system and public pay telephone stations in Commonwealth property and generates $12,766,000 in annual revenue.
The court in Washington reiterated the well-settled proposition that no legitimate government purpose can be attained by denying to incarcerated persons the reasonable access to telephone use. I agree, however, that incarcerated individuals have no rights to unlimited telephone use, id. (citing Benzel v. Grammer, 869 F.2d 1105 (8th Cir.1989)), and that reasonable limitations must be placed on inmate telephone access in accordance with legitimate penal security interests. Id. (citing Strandberg v. City of Helena, 791 F.2d 744 (9th Cir.1986)). Nevertheless, the Washington court reiterated the well-established principle that the telephone service provided by prison administrators is subject to judicial scrutiny for unreasonable restrictions. See Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) (the Supreme Court articulated reasonableness standard and factors to be considered therein when reviewing challenges to prison regulations).
The fundamental question that has not been thoroughly reviewed and answered is whether it is just and reasonable to impose the obligation upon the families and *434 friends, and in some situations the attorneys, of inmates to fund a $5,000,000 commission to the Commonwealth through the payment of excessive collect call rates set by the provider of the Commonwealth's inmate telephone system and whether this obligation infringes upon the First Amendment rights of prisoners to maintain contact with the outside world and of their families to communicate with them. When reviewing the reasonableness of the rates at issue the PUC should have applied the Turner reasonableness standard. That standard requires a determination of whether a valid and rational connection exists between the regulation and a legitimate governmental interest to justify it; whether alternative means are available to prisoners for exercising the rights at issue; whether the impact of an accommodation of prisoner rights at issue is overly burdensome; and whether a total lack of other obvious alternatives exist. Evidence of other alternatives may demonstrate the unreasonableness of the prison regulation. Id.
I disagree with the majority's discussion on other issues as well, particularly the equal protection claim which includes Petitioners' arguments that the evidence demonstrates the discriminatory application of collect call rates against African American and Latino inmates who comprise 67 percent of the total inmate population in the Commonwealth's penal institutions and who also are most likely indigent. The PUC unequivocally erred when it summarily rejected Petitioners' equal protection arguments after determining that a suspect class is not created merely because a majority of the incarcerated persons affected "are disproportionately a racial minority." PUC Op. at 32. As support for this determination, the PUC relied on Abdul-Akbar v. McKelvie, 239 F.3d 307 (3d Cir.2001), a case involving the Prison Reform Litigation Act's "three strikes rule" which placed restrictions on the filing of prisoner civil lawsuits in federal courts. The majority in Abdul-Akbar merely stated as a general proposition that neither prisoners nor indigents are considered a suspect class.
The dissent in Abdul-Akbar noted the majority's concurrence in the principle that statutes substantially burdening a fundamental right must serve a compelling governmental interest. The dissent observed, however, that more in-depth judicial scrutiny and inquiry may be necessitated when reviewing the effects of statutory burdens upon discrete minorities, and it noted that prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from racial discrimination, citing among other cases Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).
After reviewing the serious and fundamental issues in this case, I believe that the PUC erred in denying all of Petitioners' exceptions.[2] In my view the PUC erred when it adopted the ALJ's decision, with slight modification, which failed to thoroughly or adequately consider all of the factors necessary under Turner for determining whether the inmate collect telephone call rates are just and reasonable. The PUC's order therefore should be vacated. This case should be remanded for further review of the evidence to determine whether the inmate collect telephone call rates meet the reasonableness standard articulated under Turner and also whether the imposition of those rates results *435 in the denial of equal protection rights.
FRIEDMAN, Judge, joins in this dissenting opinion.
NOTES
[1] The decision in this case was reached prior to the date that President Judge Doyle assumed the status of senior judge on January 1, 2002.
[2] The decision in this case was reached prior to the date that Judge Kelley assumed the status of senior judge on January 1, 2002.
[3] C.U.R.E. is an organization of family members, friends, and persons interested in maintaining a humane criminal justice system. The national headquarters for C.U.R.E. is San Antonio, Texas. [PUC Findings of Fact Nos. 17-18.]
[4] AT&T states that the term "inmate services" refers to the collect-only telecommunications services provided by a telecommunications carrier to inmates incarcerated in correctional institutions. AT&T avers that the only inmate service rates at issue in the proceeding before the PUC were intrastate rates, and that AT&T's interstate rates fall within the exclusive jurisdiction of the Federal Communication Commission (FCC).
[5] The PUC modified the ALJ's decision by adding that the doctrine of primary jurisdiction, or primary exclusive jurisdiction, applies to Feigley's challenge to the Commonwealth's bidding practices. The doctrine of primary jurisdiction allows courts to derive the benefit of agency determinations over matters within the agency's scope of expertise. However, in the present matter, the PUC found that Feigley's challenge to the legalities of the Commonwealth's bidding procedures was a matter not properly before the PUC for determination.
[6] Our scope of review is to determine whether constitutional rights have been violated, whether an error of law has been committed, or whether the findings of fact are supported by substantial evidence. Cup v. Pennsylvania Public Utility Commission, 124 Pa.Cmwlth. 291, 556 A.2d 470 (1989).
[7] 47 U.S.C. §§ 251-276.
[8] 66 Pa.C.S. §§ 101-§ 3316.
[1] The current surcharge for inmate collect calls is $3.30 per call, and it is payable each time an inmate initiates a collect call even when such calls are prematurely disconnected through equipment failure or from any other cause. The transport charge is $.45 per minute, effective August 1999, for intrastate calls.
[2] I further disagree with the decision to dismiss Verizon, the prime contractor, as a party respondent inasmuch as its participation clearly is indispensable to these proceedings. The PUC and AT&T agreed that Verizon's participation would be appropriate.