**HERITAGE BUILDING GROUP, INC., Appellant,**

v.

**PLUMSTEAD TOWNSHIP BOARD OF SUPERVISORS.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 10, 2003.

Decided Oct. 17, 2003.

John A. Vanluvanee, Doylestown, for Appellant.

H. Peter Nelson, Perkasie, for Appellee.

BEFORE: McGINLEY, Judge, SIMPSON, Judge, and JIULIANTE, Senior Judge.

OPINION BY Senior Judge JIULIANTE.

Heritage Building Group, Inc. (Heritage) appeals from the November 27, 2002 order of the Court of Common Pleas of Bucks County (trial court) that affirmed the decision of the Plumstead Township Board of Supervisors (Board): (1) denying Heritage's substantive challenge to the validity of the Township's Zoning Ordinance (Ordinance); and (2) rejecting Heritage's proposed curative amendment. We affirm.

Heritage is the equitable owner of two parcels of land located in the Township's RO–Rural Residential District. The Tollgate tract, consisting of approximately 71 acres, lies in the eastern section of the Township. The Doyle tract, consisting of approximately 41 acres, lies in the western section of the Township. Multi-family housing units are not permitted in the RO District.

On September 23, 1998, Heritage filed a substantive challenge to the validity of the Ordinance alleging that the Township failed to provide for its "fair share" of land in zoning classifications that permitted multi-family housing in the nature of townhouses and apartments. Heritage also alleged that the Ordinance did not provide

the opportunity for the development of a reasonable range of affordable multi-family dwellings as allegedly required by Section 604(4) of the Pennsylvania Municipalities Planning Code (MPC).[1]

In addition, Heritage submitted a curative amendment which proposed rezoning the RO District in order to create a new R–6 Residential District. The proposed R–6 District would permit multi-family housing, including multiplexes, townhouses and apartments at a density of ten units per acre. At a minimum, Heritage proposed the rezoning of the Tollgate and Doyle tracts to permit the construction of multi-family housing. Specifically, Heritage sought to build 380 dwelling units on the Doyle tract and 710 dwelling units on the Tollgate tract.

During the period of January 5, 1999 through February 1, 2001, the Board conducted a series of hearings on this matter. On May 8, 2001, the Board issued a decision and order denying Heritage's validity challenge and rejecting its proposed curative amendment. The Board also rejected Heritage's contention that the Ordinance failed to comply with the requirements of Section 604(4) of the MPC.

In its decision, the Board applied the three-prong "fair share" test established by the Supreme Court in *Surrick v. Zoning Hearing Board of the Tp. of Upper Providence*, 476 Pa. 182, 382 A.2d 105 (1978) for deciding de facto exclusionary challenges. In *Overstreet v. Zoning Hearing Board of Schuylkill Tp.*, 152 Pa. Cmwlth. 90, 618 A.2d 1108, 1113 (1992), we summarized the *Surrick* "fair share" test as follows:

> First, the inquiry must focus on whether the community in question is a logical area for population growth and development. Next, if the community is in the

path of growth, the present level of development must be examined. Lastly, if the community which is located in the path of growth is not already highly developed, then the reviewing body must determine if the zoning ordinance has the practical effect of unlawfully excluding the legitimate use in question. Exclusionary impact can invalidate an ordinance; exclusionary intent is not necessary.

In the case at bar, the Board determined that although the middle of the Township was in the path of growth, the eastern and western sections of the Township, where the Tollgate and Doyle tracts are located, remained primarily agricultural and was not in the path of growth.

Despite finding that the Doyle and Tollgate tracts were not in the logical path of growth, the Board nevertheless addressed the second and third prongs of the *Surrick* test. With regard to the second prong, the Board rejected Heritage's contention that land used for agricultural purposes was not highly developed. Rather, the Board reasoned that land used for agricultural purposes should be considered as highly developed as land used for residential, industrial or commercial uses. Consequently, the Board concluded that Heritage failed to meet the second prong of the *Surrick* test, *i.e.*, that Heritage failed to demonstrate that the Township was not highly developed.

With regard to the third prong of *Surrick*, the Board determined that the Ordinance was not exclusionary and that Heritage had chosen to build single-family residences in zoning districts such as the R–3, R–4 and R–5, which permitted multi-family housing. Citing *Montgomery Crossing Assocs. v. Tp. of Lower Gwynedd*, 758 A.2d 285 (Pa.Cmwlth.2000), *ap-*

---

1. Act of July 31, 1968, P.L. 805, *as amended,*  53 P.S. § 10604(4).

peal denied, 565 Pa. 656, 771 A.2d 1291 (2001), where this Court recognized that if a district had been zoned for a certain use, but later used for another purpose, it could not be found to be exclusionary on that basis, the Board in the present case noted that even though these districts have become "built out" due to the builders' preference for single-family housing, this does not render the Ordinance exclusionary as to multi-family dwellings.

With regard to Heritage's contention that the Ordinance does not comply with Section 604(4) of the MPC, the Board rejected Heritage's contention that the term "reasonable range of mutli-family dwellings, in various arrangements," essentially requires that the Ordinance provide a zone for "affordable" multi-family housing at a range of densities for people with low to moderate incomes. In support of its position, the Board cited *BAC, Inc. v. Board of Supervisors of Millcreek Tp.*, 534 Pa. 381, 633 A.2d 144 (1993), where our Supreme Court determined that *Surrick* prohibited the de facto exclusion of uses rather than classes of people.

The Board also rejected Heritage's contention that the density requirements in the Ordinance for the R–3 District, *i.e.*, 3.5 dwelling units per acre, are unreasonably low and that no developer would choose to construct multi-family dwellings with a density requirement of only 3.5 to 4.5 dwelling units per acre. The Board noted that Heritage has already constructed multi-family housing at densities as low as 2.5 dwelling units per acre.

On appeal, the trial court disagreed with the Board's analysis regarding the first prong of the *Surrick* test inasmuch as the Board divided the Township into three separate sections and found that only the central section of the Township was in the path of growth. The trial court noted that in a previous 1998 case involving a similar *Surrick* challenge by Heritage, it had concluded that the entire Township was in the logical path of growth and development and that such should be the case for some time to come. *See Heritage Bldg. Group, Inc. v. Plumstead Tp. Zoning Hearing Board*, 71 Bucks County L. Rep. 587 (1998). As a result, the trial court concluded that the Board abused its discretion in determining that the western and eastern sections of the Township were not in the path of growth and development.

With regard to the second and third prongs of the *Surrick* test, the trial court affirmed the Board. The trial court also affirmed the Board's determination that the Ordinance complied with the requirement in Section 604(4) of the MPC. The trial court reiterated the Board's finding that four zoning districts specifically allow for apartments, townhouses and other types of multi-family housing. The trial court also cited *BAC, Inc.*, for the principle that a municipality need not establish a zoning district permitting affordable housing for low to moderate income individuals.

The trial court also affirmed the Board's determination that the density limitations in the Township did not have the cumulative effect of excluding multi-family units. As the trial court noted, although it may be more profitable to build single family residences, that fact does not preclude the construction of multi-family dwellings. The trial court also noted that Heritage has already built multi-family housing developments at densities equal to or lower than those required by the Ordinance.

██ Heritage's appeal to this Court followed. Our review of the Board's order is limited to determining whether the Board abused its discretion by finding facts unsupported by the evidence or whether the Board erred as a matter of law. *Heritage Bldg. Group, Inc. v. Bedminster Tp. Board*

*of Supervisors,* 742 A.2d 708 (Pa.Cmwlth. 1999).

## I.

█ Heritage asserts that the Board erred in determining that the Ordinance is neither de facto exclusionary nor unconstitutional with respect to its provisions for multi-family housing. Heritage cites *BAC, Inc.,* for the proposition that *Surrick* still provides the analytical framework for deciding de facto exclusionary challenges.

█ In *Upper Salford Tp. v. Collins,* 542 Pa. 608, 669 A.2d 335 (1995), the Supreme Court recognized that there is a presumption that zoning ordinances are constitutional and that a party challenging the constitutionality of a zoning ordinance bears a heavy burden of proof. "In determining whether an ordinance creates a *de jure* exclusion, '[u]ncertainties in the interpretation of an ordinance are to be resolved in favor of a construction which renders the ordinance constitutional.'" *Montgomery Crossing Assocs.,* 758 A.2d at 288 (quoting *Upper Salford Tp.,* 542 Pa. at 610, 669 A.2d at 336).

█ Initially, we note that Heritage does not dispute the trial court's conclusion that the entire Township is in the path of growth and development. Hence, Heritage's first argument is that the Board erred or abused its discretion in determining that the Township was not a "highly developed" municipality as of the date Heritage's substantive challenge was filed. The party challenging the ordinance bears the burden of showing that all three prongs of the *Surrick* test have been established. *Farley v. Zoning Hearing Board of Lower Merion Tp.,* 161 Pa. Cmwlth. 229, 636 A.2d 1232 (1994).

Specifically, Heritage challenges the Board's determination that land used for agricultural purposes must be considered "developed" for purposes of the *Surrick* analysis. Heritage maintains that properties used for agricultural purposes should be considered available for residential development unless the development rights have been sold or otherwise extinguished.

In addressing this issue, the Board reasoned:

> If development means residential, commercial or industrial buildings upon land, then this percentage of the Township is not developed within those uses, however, the [Ordinance] sets forth specific agricultural uses at Section 108.A. of the Ordinance, many of which have all of the characteristics of industrial operations and are, therefore development. Section 108.A. of the [Ordinance] lists the following agricultural uses: General Farming (Use A1), Crop Farming (Use A2), Farm Unit (Use A3), Agricultural Retail (Use A4), Intensive Agricultural Use (Use A5), Commercial Forestry (Use A6), Nursery (Use A7), Garden Horticultural Centers (Use A8) and Farm Support Facility (Use A9). The Township presented testimony that 5,100 acres within the Township have an agricultural connection or are involved in agricultural development, and Rieker's failure to analyze this fact renders his testimony not credible on the issue of what is "development" in Plumstead Township. *The Township presented substantial testimony regarding the extent of agricultural development and production both in Bucks County and Plumstead Township. The Surrick case did not limit development to only residential, commercial or industrial development in evaluating this second prong, and this Board does not believe that Surrick or the MPC requires that the vast testimony presented regarding such development be ignored.* (F.O.F. 124–157).

Board's Decision at 27–28; R.R. 53a–54a (emphasis added).

■ It is well settled that the Board, as the fact finder in this matter, may reject even uncontradicted testimony if it determines that it is lacking in credibility. *Heritage.* Hence, it was within the province of the Board to reject Rieker's testimony as not credible.

Furthermore, in *Boundary Drive Associates. v. Shrewsbury Tp. Board of Supervisors,* 507 Pa. 481, 491 A.2d 86 (1985), our Supreme Court recognized that the preservation of agricultural land is a legitimate municipal goal and that zoning regulation is an appropriate means of achieving that goal. *See also Kirk v. Zoning Hearing Board of Honey Brook Tp.,* 713 A.2d 1226 (Pa.Cmwlth.1998) (Section 603(b)(5) of MPC, 53 P.S. § 10603(b)(5), authorizes municipalities to enact zoning ordinances protecting and preserving agricultural land and activities).

With these principles in mind, this Court agrees with the Board that the term "developed" for purposes of a *Surrick* analysis should include *active* agricultural uses such as those described by the Board, *i.e.,* crop farming, general farming, farm support, nursery and horticultural uses. As the Board noted, nothing in *Surrick* suggested that land developed for agricultural purposes could not be considered "highly developed" for purposes of determining how much land was available in a municipality for the construction of housing.

Consequently, we conclude that the Board neither erred nor abused its discretion in determining that land currently used for agriculture or agricultural-related purposes is properly considered to be "developed" for purposes of the second prong of the *Surrick* test. Therefore, we further conclude that the Board did not err in determining that Heritage failed to meet its *Surrick* burden of proving that the Township was not highly developed.[2]

■ Having determined that Heritage failed to establish that the Township was not highly developed, a review of the Board's conclusion that Heritage failed to establish that the Ordinance has the practical effect of unlawfully excluding multi-family housing is non-essential. Nevertheless, we believe that the Board correctly determined that the Ordinance was not exclusionary as to multi-family dwellings. As the Board concluded, the Ordinance provides for multi-family housing in the R–3, R–4, R–5, Village Center and Mobile Home Park Districts.

■ Moreover, as the Board noted, Heritage itself significantly reduced the land available for multi-family dwellings in the R–3, R–4 and R–5 Districts by building single-family homes instead of multi-family dwellings.[3] As this Court noted in *Montgomery Crossing Assocs.,* "if a district containing available land has been zoned to permit a particular use, one may not later base a claim that the use is excluded on the fact that the land has been used for another purpose instead." 758 A.2d at 290. *See also Stahl v. Upper Southampton Tp. Zoning Hearing Board,* 146 Pa. Cmwlth. 659, 606 A.2d 960, 963 (1992) ("where a municipality's zoning ordinance allocates sufficient land for a use, but the

2. In addition, we again note that the Board rejected as not credible Rieker's testimony regarding the level of development in the Township.

3. For example, the Board found that Heritage built 116 single family homes in the Summer Hill development in the R–3 District, which permitted six different types of multi-family units. Finding of Fact No. 27. Heritage could have built as many as 370 multi-family units instead of the single family units.

area ultimately becomes saturated by other uses, the inability to develop land does not amount to an unconstitutional prohibition of the use").

In addition, the Board accepted as credible the testimony of the Township's Planner, Lynn Bush, who testified that the Township has already provided for its projected demand for multi-family units through the year 2015. In fact, Bush testified that based on forecasts and population projections from the Delaware Valley Regional Planning Commission, the number of multi-family units currently approved exceeds the projected number of multi-family units needed by the year 2010 by 161 units and by 37 units for the year 2015. As discussed above, matters of credibility are strictly for the Board. *Heritage*.

In view of the foregoing, we believe that the Ordinance is not exclusionary as to multi-family dwellings. Consequently, we conclude that Heritage failed to meet the third prong of the *Surrick* test, *i.e.*, Heritage failed to establish that the Ordinance is exclusionary as to multi-family housing.

## II.

■ Heritage next contends that even if there is available land in the R–3 District, which is zoned for multi-family housing, the evidence presented by Heritage shows that at a maximum density of only 3.5 dwelling units per acre in a district where a developer could chose to build almost any dwelling type, a typical developer would build as few multi-family housing units as possible. Therefore, Heritage argues that the Ordinance has the cumulative effect of prohibiting opportunities for the development of a range of multi-family dwellings.

Essentially, Heritage maintains that through the use of limitations on density and the technique of allowing other, more profitable housing types to be developed at the same density, the Township has created a de facto exclusion of multi-family dwellings. In support of its position, Heritage cites *Fernley v. Board of Supervisors of Schuylkill Tp.*, 509 Pa. 413, 502 A.2d 585 (1985) and *Stahl*.

A review of these cases, however, indicates that they are both inapplicable. First, as Heritage concedes, *Fernley* involved a de jure exclusion of all apartments from a municipality. Likewise, *Stahl* dealt with a municipality's minimum lot size requirements for mobile homes. The issue of minimum lot sizes for multi-family dwelling units is not at issue in the present case.

■ As the Township points out, in order to establish that a zoning ordinance is unconstitutional on economic terms, the challenger must establish that the use in question is economically unfeasible. *See Kirk*, 713 A.2d at 1231 ("an ordinance is not to be declared invalid because it may deprive the owner of most lucrative and profitable uses; so long as the property in question may be reasonably used for the purposes permitted under the ordinance").

In the present case, the Township presented evidence that Heritage has constructed multi-family developments at densities equal to or lower than 3.5 dwelling units per acre. Specifically, the Board found that Heritage has constructed multi-family units at the Summer Hill development in the Township at a density of 2.5 units per acre. Finding of Fact No. 33; R.R. 34a. Heritage has also constructed Stonebridge, a mixed-use development in neighboring Bedminster Township. Stonebridge contains apartments, twins and singles at a density of 2.9 units per acre. Finding of Fact No. 39; R.R. 35a. Heritage has also constructed a townhouse development in Warwick Township at a den-

sity of 3.1 units per acre. Finding of Fact No. 34; R.R. 34a.

Consequently, this Court believes that the Board did not err in rejecting Heritage's claim that the 3.5 unit per acre density requirement for multi-family housing units in the R–3 District amounted to a de facto exclusion of said housing units. To the contrary, the evidence shows that Heritage has constructed multi-family housing at that density. In short, the fact that it may be less profitable to construct multi-family units rather than single family units in the R–3 District does not render the Ordinance unconstitutional. *Kirk.*

### III.

■ Heritage next contends that the Ordinance is unconstitutional because it fails to provide for the opportunity for the development of a reasonable range of multi-family dwellings in various arrangements as mandated by Section 604(4) of the MPC, which provides:

The provisions of zoning ordinances shall be designed:

. . . .

(4) To provide for the use of land within the municipality for residential housing of various dwelling types encompassing all basic forms of housing, including single-family and two-family dwellings, and a reasonable range of multi-family dwellings in various arrangements, mobile homes and mobile home parks, provided, however, that no zoning ordinance shall be deemed invalid for the failure to provide for any other specific dwelling type.

53 P.S. § 10604(4).

Essentially, Heritage asserts that even if this Court concludes that the opportunity to develop multi-family housing under the Ordinance is not illusory, the Ordinance is nonetheless invalid because it does not meet the statutory mandate in Section 604(4) of the MPC to provide for a reasonable range of affordable multi-family housing at a range of densities. In support of its position, Heritage cites the Supreme Court's decision in *Surrick*, which, in turn, cites *Tp. of Willistown v. Chesterdale Farms, Inc.*, 462 Pa. 445, 341 A.2d 466 (1975), which quotes the New Jersey Supreme Court's decision in *Southern Burlington County NAACP v. Tp. of Mt. Laurel*, 67 N.J. 151, 336 A.2d 713 (1975).

In *Southern Burlington County NAACP*, the New Jersey Supreme Court concluded that a municipality's zoning ordinance may not foreclose the opportunity for low and middle income housing. Rather, the Court noted that a municipality must provide for its fair share of affordable housing for those classes of people. However, our Supreme Court noted in *Surrick* that "[w]e are not bound by New Jersey's purported 'vast expansion of zoning principles.'" 476 Pa. at 191, n. 8, 382 A.2d at 109, n. 8.

In *BAC, Inc.*, our Supreme Court further clarified *Surrick*:

In *Surrick*, we recognized a clear distinction between restrictions on uses of property and exclusions of classes of people. We stressed that only the former is proper subject of the analysis we synthesized. This is because it flows from the constitutionally protected right to own and enjoy property. Thus, it grew out of a line of cases striking down zoning schemes for restricting or excluding certain uses of property, not classes of people. *Surrick*, 476 Pa. at 193 n. 10, 382 A.2d at 110–11 n. 10. Since the focus of BAC's challenge is that the zoning ordinance does not make reasonable provision for mobile home uses, its reliance on evidence relating to the [t]ownship's alleged failure to accommo-

date a certain class of people is misplaced.

534 Pa. at 387, 633 A.2d at 147.

As the Court stated in *BAC, Inc., Surrick* only applies to the exclusion of uses, not classes of people. Furthermore, in *Precision Equities, Inc. v. Franklin Park Zoning Hearing Board,* 166 Pa.Cmwlth. 607, 646 A.2d 756, 760 n. 4. (1994), this Court noted that Pennsylvania's approach to zoning is different from that of New Jersey. In Pennsylvania, municipalities are not legally mandated "to use zoning as a socio-economic tool to create housing for various classes of people." *Id.*

Heritage attempts to distinguish *BAC, Inc.* on the ground that Section 604(4) of the MPC requires a reasonable range of "multi-family housing," which does not include "mobile home parks." However, as the Township points out, *BAC, Inc.* and *Precision Equities, Inc.* clearly indicate that unlike New Jersey, Pennsylvania municipalities are only required to zone for all uses, not for all income classes of people. Therefore, we conclude that the Board did not err in determining that Section 604(4) of the MPC does not require that the Township zone for affordable multi-family housing for low to moderate income individuals. *BAC, Inc., Precision Equities, Inc.*

For the foregoing reasons, we affirm the order of the trial court.

### ORDER

AND NOW, this 17th day of October, 2003, the November 27, 2002 order of the Court of Common Pleas of Bucks County is AFFIRMED.